### UNITED STATES v. MINKOFF.
### No. 310.

Circuit Court of Appeals, Second Circuit.

Aug. 2, 1943.

---

Joseph Leary Delaney, of New York City (Samuel W. Altman, of New York City, of counsel), for defendant-appellant.

Mathias F. Correa, U. S. Atty., of New York City (Edward C. Wallace, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The appellant was tried in the District Court for the Southern District of New York on an indictment in one count charging him, in violation of 18 U.S.C.A. § 88, with conspiring with Anthony Barracato, two fictitious persons called John Doe and Richard Doe, as to which there was a severance before trial, and divers unknown persons to endeavor to obstruct or impede the due administration of justice. See 18 U.S.C.A. § 241. It was alleged that the unlawful agreement was to have Barracato undergo an abdominal operation while he was being tried with twenty-one other defendants on three indictments, consolidated for trial, in the Southern District of New York. The purpose of the conspiracy was to enable Barracato to avoid the consequences of that trial by having a severance or a mistrial declared as to him on the ground that his absence was involuntary because it was ostensibly caused by an operation whose performance could not safely be delayed.

The jury returned a verdict of guilty on which there was a judgment and sentence. The appellant now seeks a reversal on the grounds that the evidence does not show that Barracato participated in the conspiracy, and, without that, no one was proved to have conspired with the appellant; that it was not a crime for Barracato to remain away from the trial; and that errors committed during the trial were so prejudicial that a reversal should follow.

There was ample evidence to enable the jury to find that before Barracato had been indicted on December 4, 1941, he had consulted a doctor and had been told that an operation to remove a gall stone was advisable but that he knew that there was no emergency and shrank from such an operation. The appellant also knew that when Barracato and his co-defendants went to trial on the indictment on April 7, 1942. Both Barracato and the appellant then felt that it would be better for him to arrange in some way to have his trial, if and when it might come about later, before some judge other than the one then presiding; that the appellant and Barracato drove together to the court house the day they thought his trial would begin which was, as it happened, the day before it did; that at the end of the first day of the trial they called at the office of Barracato's doctor and without telling him about the trial, made tentative arrangements for an early operation; that at the conclusion of the third day of trial appellant met Barracato at the court house and went with him, his attorney, and two other men to and into the Woolworth Building in New York where they remained about an hour and then all came out, got into the appellant's car and were driven by him to his home. That evening the appellant telephoned Barracato's doctor, who still was kept in ignorance of the trial, that Barracato was in great pain, much more agonizing than before, and that he wanted to go to the hospital. Barracato also then talked with the doctor by telephone and told him that his pain was worse than it had been and that he wanted an operation as soon as possible. The doctor then arranged with a surgeon to perform the operation the next day. That evening the appellant, with an unknown man, called upon the doctor who told him that the operation would be performed at ten thirty the next morning. On Saturday the eleventh the appellant called at the doctor's office and was told that the doctor had been called to the district attorney's office and questioned about the Barracato business. When asked to give the substance of his conversation with the appellant, he testified: "I said, 'Look here,

Mr. Minkoff, I was called to the District Attorney's office, he was a star witness on a bootleg case, what is the whole thing about?' He said, 'Don't worry about it, leave it to me. Mr. Barracato was a sick man and he needed the operation at once.' I said he was a star witness on a case. He said 'That don't mean nothing and don't you dare mention my name.'"

The operation was performed primarily in reliance upon the subjective symptoms Barracato saw fit to give the doctors. It disclosed that there were no gall stones and that there was "no evidence of acute inflammation of the gall bladder." His temperature was normal or close to it before the operation and the "physical examinations that would indicate disease of the gall bladder were entirely negative." Being asked, "When you found these symptoms did you still think you should go ahead?" the surgeon replied, "I did not think there was any necessity for an emergency operation, but in view of the evidence we had we knew an operation was indicated as a cure for that condition." The gall bladder when exposed by the operation did show signs of chronic inflammation and was surrounded by adhesions which might well have caused pain. It was removed and so was the appendix which is usually taken out when such an operation is performed. The patient died after the operation from a cause—pulmonary embolism—not directly connected with his condition before he entered the hospital.

The appellant who went to the hospital with Barracato on the day of the operation returned the next day and asked how much the bill would be. After being told and trying unsuccessfully to get contributions from Barracato's family he made a comparatively substantial partial payment out of his own money.

The appellant argues that there was no evidence that Barracato conspired with him and, a fortiori, none that anyone else did. He therefore insists that the proof of his guilt was insufficient since a man cannot conspire with himself alone. Bartkus v. United States, 7 Cir., 21 F.2d 425. The latter is, of course, so but whether there was a conspiracy in which Barracato participated with the appellant was on this evidence plainly for the jury. Barracato and the plaintiff might have been actuated solely by a sincere, though mistaken, belief that the operation was immediately necessary. They might on the other hand have agreed that what appeared to them to be necessary was to remove Barracato from the dangers they visualized in his trial and to postpone the evil day by hook or crook in the hope that delay would prove advantageous. The proof of what they did and how they did it supplied enough evidence of the unlawful agreement and of ample overt acts in consummation of it provided the jury believed it. See, Remus v. United States, 6 Cir., 291 F. 501.

By the same token it was for the jury to determine not alone whether Barracato did in fact voluntarily absent himself from the trial in such a way that it could have proceeded without his presence to a conviction, if one were had, but whether he did it in willing and understanding cooperation with the appellant in such a way that it would have appeared involuntary and made it seemingly unlawful to have tried him in his absence.

We will assume that a defendant not charged with a capital offense may waive his right to attend his trial and absent himself voluntarily without depriving the court of power to proceed as though he were present. Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500, Ann. Cas.1913C, 1138. But that is clearly not the apparent situation which these conspirators in this instance planned to create. They planned, as the jury must have readily perceived and found, to have Barracato leave the trial under circumstances which seemed, contrary to the fact, to be beyond his control and against his will. They could then count confidently upon having a motion for a mistrial granted. To proceed against him in the absence of a waiver, if it was impossible to be present, would have been erroneous since it would have denied him his undoubted right to be present; to confront the witnesses produced against him; and to aid in his own defense. No more was needed to make out a conspiracy to obstruct and impede the due administration of justice. Samples v. United States, 5 Cir., 121 F.2d 263; United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553. The offense was complete, regardless of success, when the first overt act to carry it out was committed. United States v. Polakoff, 2 Cir., 121 F.2d 333.

The appellant argues that during the trial errors occurred which, though none "alone would probably have seriously biased the jury," had the cumulative ef-

fect of doing so. Appellant testified in his own behalf and during his cross-examination was asked if he had ever pleaded guilty to a crime, misdemeanor or other violation of law. He replied that he had pleaded guilty to a misdemeanor committed by infringing a label. There is considerable conflict in authority as to whether or not prior conviction for a misdemeanor may be shown in an attempt to impair the credibility of a defendant in a criminal case who elects to testify at his trial. In some states it is not allowed but in New York the statute permits it except where the offense is a violation of the traffic laws. New York Penal Law, § 2444, Consol.Laws, c. 40. The federal cases are not uniform on the subject and apparently in states where such inquiry is forbidden the federal courts are prone to follow suit. Where, as in New York, such examination is proper in the state courts there is ample authority for permitting it in the federal courts. Merrill v. United States, 9 Cir., 6 F.2d 120; United States v. Waldon, 7 Cir., 114 F.2d 982.

Also during the cross-examination of the defendant questions were asked to bring out the extent of his acquaintance with Barracato and whether he knew why Barracato went to Atlanta. He replied that he read in the paper that Barracato served in Atlanta penitentiary and "that's about all I know." This was admissible, if for no other reason, to show that appellant knew that if Barracato was convicted he would stand before the court for sentence as a second offender and that the danger of his position as such might well be an added incentive that made the consummation of the conspiracy more likely.

The remarks of the court during the trial to which the appellant has taken exception are hardly worth mentioning. In cautioning the prosecutor to be careful when he was examining a government witness whom he had asked about what was said when the appellant called Barracato's doctor by telephone, the judge said it was a close question whether that came under the wire-tapping rule and added, "I do not want to spend two or three days trying this case and have it reversed for an error in it." The question was then withdrawn. The other remark the appellant seems to think was harmful to him was made during appellant's cross-examination. He had become somewhat evasive in his answers to questions concerning what he said when he was questioned in the district attorney's office on April 17th. The judge after saying that he was being asked simple questions, should make direct answers, and that he could make any explanation he wanted to, urged him to by asking, "Now won't you do that and answer the question?" His counsel then objected to these instructions and when asked if he wanted to say anything said he wanted a question put. The last sentence in what the court then said is the remark now relied on. It was, "I want to be absolutely fair to him. If he wants to make a statement, I want him to make the statement to the jury. If you don't want him to do it, that's all right, but I don't want him to go out of the court and then go outside and say he did not have a chance." In thus making it plain to the witness, and to his attorney, that the requirement to answer a question directly was accompanied by the privilege to explain the answer there was, of course, no reversible error.

The remaining so-called trial errors consist of the failure to charge appellant's requests Nos. 5 and 6. The first was to the effect that Barracato could voluntarily absent himself from the trial after it had begun in his presence without preventing its completion and that his action in so doing "operates as a waiver of his right to be present."

The court made this clear enough when, following the charge, the appellant's attorney read the request in the presence of the jury in taking an exception based upon a refusal to comply with it; and also made it plain, as was proper in view of the evidence, that where a defendant on trial absents himself of his own motion and his own action in furtherance of such a conspiracy as was charged in this instance there would not be the kind of voluntary action which would make the law embodied in the request applicable.

In the other request reference was made to the testimony of Barracato's doctor in which he accounted for statements he had made before trial which were inconsistent with his testimony on trial by saying that he did so because of threats made by the defendant. The request contained what was advanced as a statement of the law defining when an "act which would otherwise constitute a crime may also be excused on the ground that it was done under compulsion or duress." That was clearly utterly foreign to any issue on trial. The

doctor was not being tried for perjury. Whether or not he had given an explanation of the conflict between his testimony and his prior statement which would have been a good defense on such a trial was quite beside the point. The question here as to his excuse was whether the reason he gave was correct in fact and it was for the jury to determine that on the question of his credibility as a witness and to decide whether his excuse was sufficient to warrant reliance upon his testimony regardless of whether, under other circumstances, it would have been sufficient in law for other purposes.

Judgment affirmed.