## UNITED STATES v. TANNUZZO et al.
### No. 150, Docket 21202.

United States Court of Appeals
Second Circuit.
April 11, 1949.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner, Roy M. Cohn, Clarke S. Ryan and Harold J. McAuley, Asst. U. S. Attys., all of New York City, of counsel), for United States of America, plaintiff-appellee.

Henry G. Singer, of Brooklyn N. Y. (Harry Silver, of Brooklyn, N. Y., on the brief), for defendants-appellants Salvatore Tannuzzo and Nunze Dellaratta.

Wegman, Spark & Burke, of New York City (J. Bertram Wegman and Richard J. Burke, both of New York City, of counsel), for defendant-appellant Anthony Vespole.

Edward H. Levine, of New York City (Arnold D. Roseman, of New York City, on the brief), for defendant-appellant David Felstein.

Before SWAN, AUGUSTUS N. HAND and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The four defendants, Tannuzzo, Dellaratta, Vespole and Felstein were indicted with five others for causing certain stolen fur coats belonging to Revillon Freres to be transported in interstate commerce and also were indicted with three of the five for conspiring to cause such transportation. The testimony adduced on behalf of the government was briefly as follows:

One DeSatnick, a truck driver for Revillon, who testified for the prosecution after pleading guilty to the substantive offense, arranged with Schneiderman, another employee of Revillon, to steal furs. On November 18, 1946, he told Schneiderman that he would have a good truckload of furs on the next day. In the evening of November 18, DeSatnick and Schneiderman met Tannuzzo, Dellaratta, Aurecchione and Vespole in Brooklyn, where a simulated hold-up was planned for November 19. On November 19, DeSatnick, accompanied by his helper Mancuso, who is said to have been innocent of the plot, drove the truck con-

taining 300 fur coats belonging to Revillon from the latter's establishment. The "fake" hold-up was carried out by Vespole at 31st Street and 8th Avenue, Manhattan, who ordered DeSatnick to drive the truck containing the furs to Brooklyn, where they turned it over to Tannuzzo and Dellaratta, who with Aurecchione, who died prior to the trial of the action, had kept it under observation and followed it in a Buick car. Tannuzzo and Dellaratta then took the furs to some undisclosed destination. Mancuso gave substantially the same testimony as DeSatnick as to the sequence of events.

DeSatnick testified that early in December, 1946, he met Aurecchione and Vespole and that Aurecchione stated in the presence of Vespole "that the stuff is hot, they are moving it from one drop to another and it is costing them some money." DeSatnick also testified that when arrangements were being first made for the theft, Schneiderman told him that Vespole "would take care of the money deal."

Grossman, a co-defendant who had pleaded guilty to both indictments, testified for the Government. He testified that two days before December 11, 1946, he and the defendant Felstein were approached in Felstein's restaurant in Newark, New Jersey, by Aurecchione and one Maislich, who asked Grossman if he could get rid of some furs, Aurecchione stating that he wanted $25,000 for them. Maislich pleaded guilty to the conspiracy indictment but secured a dismissal on the substantive indictment. The following day, pursuant to arrangements, Grossman met Aurecchione and Maislich in Brooklyn and was taken by them to Tannuzzo and Dellaratta who showed him the furs in a basement. Later that day, Aurecchione, Grossman and Felstein conferred in Newark, and Felstein agreed to purchase the furs for $15,000. On the next day, December 11, Felstein and Grossman borrowed a truck from a grocer in Elizabeth, New Jersey, which Grossman drove to Brooklyn. The latter pleaded guilty to both indictments.

Aurecchione, Tannuzzo and Dellaratta helped Grossman load this truck with the furs, and he then drove the truck to New Jersey via the Manhattan Bridge, Holland Tunnel and the Pulaski Skyway. Aurecchione and Tannuzzo followed him in a car and before the truck started Aurecchione said in the presence of the others "I'll follow you into Jersey." The truck broke down shortly after turning off the Pulaski Skyway, between Kearny and Harrison, New Jersey, and Grossman abandoned the truck with its contents. The New Jersey Police immediately took the truck and its contents into their possession.

Aurecchione and Tannuzzo conferred with Grossman and Felstein that night at Felstein's place of business in Newark, and the grocer from whom the truck had been borrowed was advised to conceal the fact that Grossman and Felstein had borrowed it.

The day after this, Aurecchione, Tannuzzo and Dellaratta again interviewed Grossman and Felstein in New Jersey in an unsuccessful effort to secure payment from Felstein for the furs.

■ Dellaratta and Vespole each contend that the evidence was insufficient to warrant conviction. Dellaratta was in Brooklyn when the hold-up was planned for November 19, and on the 19th followed the truck containing the furs to Brooklyn, received it with Tannuzzo, and with the latter took the furs to some undisclosed destination. Likewise, on December 11, he helped Grossman load the truck, which was about to take the furs to New Jersey, and after the New Jersey Police had taken the truck and its contents into possession, appeared the next day and talked with Grossman and Felstein with a view to securing payment for the furs from the latter. Under these circumstances, there was certainly sufficient proof to convict Dellaratta both under the substantive indictment and for conspiracy. The contention that the jury could not find that he knew that the truck which he helped to load in Brooklyn was to transport goods in interstate commerce, even when Aurecchione is said to have stated in his presence, "I'll follow you into Jersey," is without substance.

■ The evidence that Vespole was made aware of the fact that the furs were to be transported in interstate commerce and therefore entered into a conspiracy with others to effectuate such transporta-

tion seems to us insufficient. While he was a key figure in the original theft of the furs and there was also the evidence that he "would take care of the money deal," and that early in December he had learned that there was difficulty in selling the goods, we find no evidence that he knew of the plan, which later developed, to take the furs to New Jersey for delivery to Felstein. The most that can be said against him is that he was only interested in obtaining a good price and would have been willing to have the furs sold to an out-of-state buyer had that disposition been brought to his attention. But such a relation to the conspiracy was insufficient to render him guilty of that offense in view of our decision in United States v. Crimmins, 2 Cir., 123 F.2d 271. See also Gable v. United States, 7 Cir., 84 F.2d 929; Davidson v. United States, 8 Cir., 61 F.2d 250, 251. The evidence which we found sufficient to establish a conspiracy in United States v. Turley, 2 Cir., 135 F.2d 867, was far stronger than that against Vespole in the case at bar.

■ But the evidence against Vespole was sufficient to convict him under the substantive indictment. The statute under which he was indicted and convicted of the substantive offense does not require proof of knowledge on his part that the stolen goods were to be transported in interstate commerce. It only requires that he knew that the goods had been stolen and that he caused them to be thus transported. If, as the evidence indicates, Vespole stole the furs and turned them over to Tannuzzo and Dellaratta to sell for joint account, without limitation as to where the sale was to be made, the jury might properly find that Vespole caused their transportation when one of his confederates arranged for a sale to Felstein pursuant to which they were taken across a state line. Conviction for the substantive offense would follow from our holding in United States v. Sherman, 2 Cir., 171 F.2d 619, 623, 624 under a similar statute. That opinion drew a distinction between the amount of knowledge necessary to establish a conspiracy and to establish the substantive offense of receiving goods stolen while moving in foreign commerce. We held, as we did in United States v.

Crimmins, supra, that knowledge that the goods were so moving was necessary to convict for conspiracy, but not for the substantive offense. To convict of that offense, it was only necessary to show that the defendant knew that the goods were stolen and that they were in fact transported in interstate or foreign commerce. See opinion of Warrington, J., in Kasle v. United States, 6 Cir., 233 F. 878, 882. See also Rosen v. United States, 2 Cir., 271 F. 651, 654, 655; Loftus v. United States, 7 Cir., 46 F.2d 841, 847.

■ Dellaratta and Tannuzzo assign error because of the admission of evidence that they had criminal records although they had not taken the stand and had not put their characters in issue. This evidence was brought out on the cross-examination of Vespole by the prosecution. However, the elicitation of the testimony that Tannuzzo and Dellaratta had criminal records was not due to the prosecution but to the insistence of Vespole's counsel. Vespole started to say that Dellaratta, Tannuzzo and himself were arrested by the New Jersey State Police when the United States Attorney broke in and said to the witness: "You can skip that," but Vespole's attorney insisted that he go on, and as a result he testified that he was arrested and given a suspended sentence for being with persons having a "record" and in that way violating the New Jersey law. No one objected to Vespole's testimony about being with persons having the record, or moved to strike it out. Only after a recess had been taken, counsel for Dellaratta and Tannuzzo moved for a mistrial because of the above statement of Vespole. The Judge denied the motion and we can see no justification for reversing the conviction of Dellaratta and Tannuzzo, who seem to have been so clearly guilty, because of Vespole's statement which at best had a most unsubstantial bearing on the case and could scarcely affect the result.

■ Tannuzzo and Dellaratta also object to the portion of the charge in which the Judge said: "A defendant has the right to remain mute and not to testify, and not to submit himself to cross-examination, and the law says that if he does not testify a

jury should draw no inference unfavorable to such defendant."

The theory of their objection seems to be that the suggestion of a right not to be subjected to cross-examination "invited" the jury to infer that if these defendants were so subjected, evidence adverse to them would be developed. This theory of possible prejudice seems entirely illusory and can have no importance when neither defendant raised any objection to this portion of the charge. The decision of the Supreme Court in Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257, has, in our opinion, no bearing upon the situation here.

■ Felstein claims that the testimony as to the theft of the furs was erroneously admitted as against him. This contention has no merit for it was necessary to show that the goods were stolen in order to connect Felstein with the substantive offense as well as with the conspiracy. The testimony of Grossman shows that Felstein knew that the goods were stolen and arranged to receive and pay for them in New Jersey after they were transported from New York. Felstein's attempt to thus escape the overwhelming evidence against him is entirely futile.

■ It is objected on behalf of all four appellants that the Judge erred in limiting the defendants' examination of the witness Grossman with respect to his addiction to narcotics. In the course of an examination in the absence of the jury, Grossman testified that he had, up to about the time of his arrest in the present case, taken opium and heroin hypodermically, but said that he had not taken them since that time (Record, folios 479–487). After this preliminary examination the Judge properly held that he was competent to testify. The trial Judge evidently considered that the testimony of Grossman at the preliminary examination was entirely clear and rational, as it seems to have been, and that nothing was to be gained by requiring him to bare his arm, as the defendants argue he should have been ordered to do. The question of his competency was one involving nothing more than the exercise of sound judicial discretion, and we see no indication that this discretion was not wisely exercised.

■ In the cross-examination of Grossman before the jury, the Judge allowed some questioning as to his addiction to narcotics both in the past and present, but refused upon the government's objection to allow the question: "How did you take dope, or how do you take dope?" We cannot see that the answer to this question would have affected the weight of Grossman's testimony, certainly when the defendants offered no expert testimony to show why it was material. If the purpose was to atack the credibility of Grossman, that purpose was not made clear to the Judge. Indeed, his ruling was apparently based on the assumption that defendants were again merely attacking Grossman's competency as a witness, which the Judge had previously disposed of satisfactorily. Grossman was allowed to testify at some length as to his use of narcotics, a prior conviction for such use, his alleged cure when at the House of Detention, and indeed as to everything defendants' counsel sought to ascertain except the single excluded question which we have referred to. The defendants can hardly claim error, when they left the trial Judge under the impression that in sustaining objections to the question he was only passing on the competency of Grossman as a witness which had previously been fully established.

■ The defendants Tannuzzo, Dellaratta and Felstein complain that their sentences were imposed precipitantly and in violation of Rule 32(a) of the Rules of Criminal Procedure, 18 U.S.C.A., because they were not given sufficient time to accumulate data bearing on mitigation of the punishment which might be imposed on them. That rule only requires the judge to give a defendant "an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment." It does not require the judge to defer sentence to enable defendants to work up proof in mitigation of their guilt. These defendants were given an opportunity to make a statement, and Felstein's attorney argued for mitigation on the ground that Felstein was a first offender. Tannuzzo

182

and Dellaratta both had prior criminal records which were brought to the attention of the court. We see no merit in the contention that Rule 32(a) was violated, and it is not even made on behalf of Vespole.

The defendants argue that they were improperly sentenced under 18 U.S.C. A. § 418a,[1] which authorizes a sentence for the same period applicable to substantive offenses created under other sections. If § 418a was properly employed in sentencing, the sentences for conspiracy of all defendants except Vespole, who, for the reasons we have already given, was not properly found guilty of conspiracy, should stand. While 18 U.S.C.A. § 88 [now § 371] was cited in the indictment and was read to the jury by the trial Judge as the penal statute applicable to the facts, we hold that this made no difference if the offenses denounced by Sections 88 and 418a were the same. See Rule 7(c), Fed.Rules Crim.Proc. as to indictments. Section 418a merely authorized a longer sentence for a certain limited class of offenses already embraced in Section 88. The provisions in Section 418a as to overt acts did not contemplate separate acts by each person charged with the conspiracy. This conclusion is borne out by the fact that the revisers, in drafting the Code of Crimes and Criminal Procedure [Title 18, U.S.C.A.], consolidated Sections 88 and 418a and other sections in a new Section 371, which provided for a maximum penalty of five years for conspiracies and contained language as to overt acts practically identical with Section 88. The revisers' notes indicate that no change was being made regarding overt acts in the consolidated statute. In addition to this, the whole theory of conspiracy involves the conception of liability of all participants for the acts of each conspirator. Furthermore, the sentences of all appellants except Tannuzzo for conspiracy were concurrent with those for the substantive offense, and separate overt acts on his part were proved by uncontradicted testimony.

The defendants Tannuzzo, Dellaratta and Vespole moved to set aside the verdict and for a new trial on the ground of newly discovered evidence, basing their contentions on alleged false statements by Grossman that he was not under the influence of narcotics at the time of trial and that he had not made a "deal" with the government affecting the length of his sentence. The Judge denied the motions after hearing much testimony and upon conflicting evidence made findings fully justifying his denial of the defendants' motion. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562.

For the foregoing reasons, the judgments of conviction for the substantive offense are affirmed in the case of all of the appellants, and the judgments of conviction for conspiracy are affirmed as to all appellants, except Vespole, as to whom the judgment for conspiracy is reversed.

---

[1] "If two or more persons enter into an agreement, confederation, or conspiracy to violate any provision of sections 413–419 of this title, and do any overt act toward carrying out such unlawful agreement, confederation, or conspiracy, such person or persons shall be punished in like manner as hereinbefore provided by sections 413–419 of this title."