**UNITED STATES of America, Appellee,**

v.

**Herbert G. JENNINGS, Appellant.**

**No. 441, Docket 72-1846.**

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1972.

Decided Jan. 5, 1973.

Certiorari Denied April 16, 1973. See 93 S.Ct. 1909.

Robert E. Green, Forest Hills, N. Y., for appellant.

Fred F. Barlow, Atty., Dept. of Justice (Robert A. Morse, U. S. Atty., E. D. N. Y., Denis E. Dillon, Sidney Glazer, Roger Pauley, Attys., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before LUMBARD, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

 The principal, and somewhat novel, issue raised by this appeal is whether, before a defendant may be convicted of offering a bribe to a public official in violation of 18 U.S.C. §

201(b)(1),[1] the Government must establish that the defendant knew the offeree to be a federal official acting in his capacity as such. We hold that such knowledge is not an essential element of the crime and, finding no merit in appellant's other contentions, we affirm his conviction.

Appellant was indicted for corruptly offering to give the sum of $400 per month to two FBI agents, David Clark and Charles Queener, with intent to influence their decisions and actions in their official capacity with respect to an illegal gambling operation. At trial Clark and Queener, who are special agents of the FBI assigned to investigate gambling operations, both testified that on August 5, 1971, they were watching a residence in Queens County from a roving, unmarked car and observed a number of automobiles pulling up to the house and passengers entering and departing the house after short intervals. On August 9 the agents returned to the same area in Clark's black Volkswagen for further surveillance, this time from a stationary position. A short time later Jennings stopped his car next to them and asked if they were looking for him. When Clark replied that he did not know Jennings and they were waiting for a friend, Jennings insisted they were "cops" observing his gambling operation which he described, in response to an inquiry from Clark, as "policy." Upon being asked his purpose in stopping, appellant replied that it was to try to prevent impending arrests in his policy operation. He further insisted, over the agents' objections, that they were "cops," and that he would not leave until they reached an agreement. Finally, an appointment was made for the following day at a hotel in Queens. At no time during the conversation did the agents identify themselves as federal officers.

On the following day the three men met at the hotel. Agent Queener, fitted with an electronic transmitter, recorded their conversation.[2] Appellant, upon inquiring whether the agents were sergeants or lieutenants, was told only that they were from "downtown." Thereupon he told them that he wanted protection for a policy operation he was conducting at three locations and that he was already paying $1,500 a month for protection from a division of about 32 police in Queens. Following some equivocation concerning who should set the price, appellant stated "What about four? Let's say four for openers," and agreed to payment on the first of the month. The agents questioned Jennings further and, when they sensed his suspicions, arrested him.

At trial the court denied appellant's request for an instruction to the jury that "the Government must prove beyond a reasonable doubt that defendant knew that the agents in question were acting for and on behalf of the United States." Instead the court instructed the jury that, while "the Government need not prove that [appellant] knew that these men were FBI agents," it must prove that Jennings "approached Agents Clark and Queener understanding and believing that the agents had the power and authority not to arrest or to help Mr. Jennings avoid arrests in the . . . gambling operations," that at the time of the offense they were FBI agents, and "that Agents Clark and Queener had the authority to make an arrest."

1. "§ 201. *Bribery of public officials and witnesses*

 \* \* \* \* \*

 "(b) Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—

 "(1) to influence any official act;

 . . . .

 \* \* \* \* \*

 "shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

2. At trial the tape was admitted into evidence and played before the jury.

The district court's instruction was legally sufficient. We decline to import into the statute, 18 U.S.C. § 201(b)(1), an additional requirement that a defendant who seeks corruptly to influence a federal official must know by which sovereign the official is employed at the time the bribe is offered. The conduct prohibited by the statute is the corrupt offer of "anything of value to any public official . . . with intent to influence any official act." Though the official must be a federal official to establish the federal offense,[3] nothing in the statute requires knowledge of this fact, which we perceive as a jurisdictional prerequisite rather than as a *scienter* requirement. Nor does the legislative history support appellant's contention as to knowledge. If anything, it suggests that the sole *scienter* required is knowledge of the corrupt nature of the offer and an "intent to influence [an] official act," 1962 U.S.Code Cong. & Admin. News pp. 3852, 3856. We see no reason to add by judicial fiat what Congress has not sought to require. United States v. Lombardozzi, 335 F.2d 414, 416 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964). Our holding accords with well established lines of authority to the effect that to convict for assault on or interference with a federal officer engaged in the performance of his official duties, 18 U.S.C. § 111, proof that the accused knew the person assaulted was a federal official is not required, United States v. Lombardozzi, *supra*; United States v. Montanaro, 362 F.2d 527 (2d Cir.), cert. denied, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966); United States v. Ulan, 421 F.2d 787 (2d Cir. 1970),[4] and that it is unnecessary to prove knowledge that an interstate facility was used to commit a fraud involving use of such facilities, United States v. Blassingame, 427 F.2d 329 (2d Cir. 1970), cert. denied, 402 U.S. 945, 91 S. Ct. 1629, 29 L.Ed.2d 114 (1971) (interstate wire); United States v. Kaufman, 429 F.2d 240, 244–245 (2d Cir.), cert. denied, 400 U.S. 925, 91 S.Ct. 185, 27 L.Ed.2d 184 (1970) (mail), or that stolen property would in fact be transported in interstate commerce, United States v. Tannuzzo, 174 F.2d 177, 180 (2d Cir.), cert. denied, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949), although such knowledge may be required to establish a conspiracy to commit the offense, United States v. Vilhotti, 452 F.2d 1186, 1189–1190 (2d Cir. 1971), cert. denied 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972); United States v. Tannuzzo, *supra*.

The authorities relied upon by appellant, being clearly distinguishable, are not persuasive. In Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L. Ed. 419 (1893), the defendants were charged with having conspired to violate R.S. § 5399, the pertinent language of which made it a crime to impede or intimidate an officer of a United States court. The indictment alleged merely that the defendants had impeded em-

---

3. Section 201(a) (1972 Supp.) provides:
 "(a) For the purpose of this section:
 'public official' means Member of Congress, the Delegate from the District of Columbia, or Resident Commissioner, either before or after he has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government or a juror; and
 \* \* \* \* \*
 'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in his official capacity, or in his place of trust or profit."

4. Appellant gains little comfort from the fact that the Fifth Circuit appears at one time to have taken a different view, see Carter v. United States, 231 F.2d 232, 235 (5th Cir.), cert. denied, 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498 (1956); Hall v. United States, 235 F.2d 248 (5th Cir. 1956). It has since changed its stance. See Bennett v. United States, 285 F.2d 567 (5th Cir. 1960), cert. denied, 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961).

ployees from proceeding to work and had sought to compel the discharge of such employees during the pendency of a federal injunction restraining such conduct, without alleging that they knew of the existence of the injunction. Although some language used by Chief Justice Fuller in his opinion appears on the surface to support appellant's position here, a closer reading makes clear that the court was concerned with the necessity for charging knowledge or notice of the existence of the injunction, as distinguished from its federal character. Similarly, the Government was here required to show an awareness by appellant that the person whom he sought to bribe was an official.

 Other decisions relied upon by appellant likewise do not deal with the defendant's knowledge of the *federal* capacity of the official involved but with the necessity for some form of knowledge that the person bribed was *an* official. See Cohen v. United States, 294 F. 488 (6th Cir. 1923) (bribery of prohibition agent); Hone Wu v. United States, 60 F.2d 189 (7th Cir. 1932) (bribery of a federal narcotics agent). In short, culpability turns upon the defendant's knowledge or belief that the person whom he attempts to bribe is an official having authority to act in a certain manner and not on whether the official possesses federal rather than state authority. Our view is in accord with the Final Report of the National Commission on Reform of Federal Criminal Laws, which does not require that a defendant know of a jurisdictional fact, since "the degree of an offender's culpability does not depend upon whether he does or does not know when he commits the offense which sovereign will be able to prosecute him." Comment to § 204 of the proposed Federal Criminal Code, contained in Hearings Before the Sub-

comm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary, 92d Cong., 1st Sess., pt. 1 at 172 (1971).

The evidence that appellant believed that the agents had the power and authority to help avoid arrests in the gambling operation under investigation was overwhelming. No further proof was required. "Often, if not usually, he cannot have absolute knowledge. He offers the bribe because he supposes the one to whom he offers it has the necessary official function; and, if his supposition is right, he commits the offense denounced by the statute." Cohen v. United States, *supra*, 294 F. at 490–491. See also Hone Wu v. United States, *supra.*

 Appellant also urges that the agents lacked jurisdiction to arrest him, because there was an absence of proof that the gambling enterprise they were investigating was of sufficient size or duration to violate the federal anti-gambling business statute, 18 U.S.C. § 1955 (1972 Supp.). But the prosecution was for bribery, not for operating a gambling enterprise, and the agents' authority to arrest for the latter offense is not dependent upon proof that the jurisdictional prerequisites of a successful prosecution for gambling exist. It is sufficient that they possessed the authority to arrest for a violation of a separate federal statute and that the defendant attempted to influence them not to exercise their authority with respect to an activity which might constitute a federal offense.[5]

 We need not tarry over appellant's claim that it was error for the trial judge to have given an *Allen*-type[6] charge to the jury after it reported itself deadlocked. The supplemental instruction that "you have an obligation to attempt to agree on a verdict" and "to see if you cannot agree without giving

---

5. Appellant's admission that he had been paying police $1,500 per month for protection of an ongoing gambling operation would appear to satisfy at least two of the three requirements of 18 U.S.C. § 1955(b) (1).

6. Allen v. United States, 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

up what you believe to be a verdict based on the evidence" and not to "arbitrarily and capriciously give up what [you feel] to be a proper verdict based on the evidence for the sake of unanimity," represented a proper attempt to avoid the necessity for a retrial, United States v. Bowles, 428 F.2d 592, 595 (2d Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970), and was not coercive. Nor does the fact that the judge knew at the time he gave the charge (as a result of the jury's unsolicited comment in violation of the judge's prior admonition not to tell him how it was divided) that the jurors were split 11 to 1 in favor of conviction, change our conclusion. United States v. Meyers, 410 F.2d 693, 697 (2d Cir.), cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L. Ed.2d 86 (1969). See also United States v. Martinez, 446 F.2d 118 (2d Cir.), cert. denied, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 259 (1971).

Affirmed.