**UNITED STATES of America,
Appellee,**

v.

**Dennis Charles TYERS, Defendant-
Appellant.**

**No. 207, Docket 73-1482.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 3, 1973.

Decided Nov. 15, 1973.

Joel A. Brenner, New York City (Andrew Lee Aubry, New York City, on the brief), for defendant-appellant.

Arthur J. Viviani, Flushing, N.Y., (John W. Nields, Jr., Asst. U. S. Atty., Paul J. Curran, U. S. Atty., on the brief), for appellee.

Before HAYS, FEINBERG and TIMBERS, Circuit Judges.

HAYS, Circuit Judge:

Appellant was convicted after a jury trial in the United States District Court for the Southern District of New York of possessing blank bank money orders valued at more than $100 which had been stolen from an interstate shipment in violation of 18 U.S.C. §§ 2 and 659 (1970). We affirm.

The Government produced evidence tending to show that appellant had told one Aaron Finkelstein that he had approximately 2,000 blank bank money orders for sale. Finkelstein agreed to find a buyer, and in a series of three meetings in early June, 1972, the two arranged the sale. At the last of these meetings Tyers told Finkelstein that he wanted him to meet his partner, who had to approve the sale, and arranged a future meeting.

Meanwhile Finkelstein arranged to sell the money orders to one "Vito" who, unknown to Finkelstein, was an undercover agent of the Secret Service.

On June 14, 1972, Finkelstein met again with appellant who was accompanied by his partner, Mallia. In discussing aspects of the sale Mallia mentioned that the money orders were obtained from Kennedy Airport.

On June 16, 1972, Aaron Finkelstein and his brother, Joel Finkelstein, met Tyers and Mallia on Long Island. Together they drove to a hotel in Manhattan. Leaving the others outside the hotel Tyers and Aaron Finkelstein carried the merchandise to a room in the hotel where they met the "buyer," Vito, who was with another undercover agent. After introductions Tyers produced the money orders from suitcases which he carried. One agent asked if the money orders were "hot." Tyers replied that they were not. When

asked if the money orders were legitimate Tyers insisted that they were and claimed that they had been obtained in a bank burglary. At this point one of the agents signalled surveilling agents stationed nearby who entered the room and seized the money orders.

In his defense appellant claimed that Aaron Finkelstein had told him that he needed one or two "big" people to accompany him on a business trip to Manhattan. Appellant agreed to do the job and hired Mallia to assist him. He denied any knowledge of the contents of the valise he carried into the hotel room or the nature of the transaction. He also denied making the statements he is alleged to have made to the undercover agents in the hotel room.

Appellant does not contest the sufficiency of the evidence to support his conviction. However, he argues that the trial court's charges to the jury contained numerous errors and that the evidence against him was not so strong that these errors can be deemed harmless.

■ Appellant contends that the trial court erred in failing to charge that in order to convict, the jury had to find that the money orders were in interstate commerce when received and possessed. The court charged instead that *"at the time of the theft"* the money orders had to be "part of a foreign or an interstate shipment." (Emphasis added.)

In United States v. Berger, 338 F.2d 485, 487 (2d Cir.), cert. denied, 380 U.S. 923, 85 S.Ct. 925, 13 L.Ed.2d 809 (1964), this Court said:

> "Congress has [in section 659] undertaken to protect and promote the flow of goods in interstate commerce, and that this undertaking is not to be hampered by technical legal conceptions."

See also United States v. Augello, 452 F.2d 1135, 1141 (2d Cir. 1971), cert. denied, 406 U.S. 922, 92 S.Ct. 1787, 32 L.Ed.2d 122 (1972); United States v. Thomas, 396 F.2d 310, 315 (2d Cir. 1968). "The use of interstate communication is logically no part of the crime

itself. It is included in the statute merely as a ground for federal jurisdiction." United States v. Blassingame, 427 F.2d 329, 330 (2d Cir. 1970), cert. denied, 402 U.S. 945, 91 S.Ct. 1629, 29 L.Ed.2d 114 (1971); United States v. Callahan, 439 F.2d 852, 862 (2d Cir.) cert. denied, 404 U.S. 826, 92 S.Ct. 56, 30 L.Ed.2d 54 (1971).

While the language of section 659 is not entirely clear, it lends itself more readily to the interpretation applied by the district court, i. e., that the requirement of interstate commerce relates to the time of the theft. This interpretation has been adopted in other circuits, see Winer v. United States, 228 F.2d 944, 947 (6th Cir.), cert. denied, 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442 (1956); United States v. Gollin, 166 F.2d 123, 125 (3d Cir.), cert. denied, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948); Turner v. United States, 14 F.2d 360 (8th Cir. 1926), and we accept it here.

If we were to reverse the trial court on this point one who steals goods from interstate commerce could simply hold such goods for a time and then pass them to others who would be exempt from federal prosecution. Such a result would be entirely inconsistent with the purpose of Congress in enacting section 659. See United States v. Astolas, 487 F.2d 275 (2d Cir. 1973).

■ Appellant also assigns as error the failure of the lower court to charge that, in order to convict, the jury must find that defendant knew that the money orders were stolen from interstate commerce. In several cases this court has held that such knowledge is unnecessary where a substantive offense rather than conspiracy is charged. United States v. Jennings, 471 F.2d 1310, 1312 (2d Cir.), cert. denied, 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed.2d 395 (1973); United States v. Vilhotti, 452 F.2d 1186, 1190 n.3 (2d Cir. 1971), cert. denied, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972); United States v. Kaufman, 429 F.2d 240, 244–45 (2d Cir.), cert. denied, 400 U.S. 925, 91 S.Ct. 185, 27 L.Ed.2d

184 (1970); United States v. Blassingame, 427 F.2d 329 (2d Cir. 1970), cert. denied, 402 U.S. 945, 91 S.Ct. 1629, 29 L.Ed.2d 114 (1971); United States v. Tannuzzo, 174 F.2d 177, 180 (2d Cir.), cert. denied, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949). Appellant has advanced no persuasive reasons for overturning this well-established line of precedents.

■ The trial court did not err in instructing the jury that it could consider the "street value" of the money orders in determining whether the value exceeded $100. United States v. Kramer, 289 F.2d 909, 920–921 (2d Cir. 1961). See also United States v. Ditata, 469 F. 2d 1270, 1272 (7th Cir. 1972); Churder v. United States, 387 F.2d 825, 832–833 (8th Cir. 1968). That appellant lacked the equipment to make the money orders negotiable could be considered by the jury in ascertaining street value, but it did not mean that as a matter of law the money orders were worth less than $100. Nor did the court err by failing to charge the jury as to its action on the lesser included offense if it found the value of the money orders to be less than $100. The indictment did not include such a charge. Defendant did not request such a charge. He could not have been harmed by its absence since if the jury found the value to be less than $100 it would have had to acquit under the charge as given.

■ Appellant objects further to the trial court's charges concerning evaluation of testimony by defendants and accomplices. The court's comment on the special interest of a defendant was entirely proper. United States v. Sclafani, 487 F.2d 245 (2d Cir. 1973); United States v. Mahler, 363 F.2d 673, 678

(2d Cir. 1966); United States v. Sullivan, 329 F.2d 755, 756–757 (2d Cir.), cert. denied, 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964). The charge on accomplice testimony is reproduced in the margin.[1] Appellant objects to the first portion of the first sentence, claiming that this instruction in effect erroneously told the jury that it had to accept the testimony of accomplice Finkelstein even if it found the testimony had little or insufficient weight. While that portion of the accomplice charge might better have been omitted, the instruction as a whole was adequate and in its total impact did not differ materially from charges which this court has upheld. United States v. Projansky, 465 F.2d 123, 136 n.25 (2d Cir.), cert. denied, 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972); United States v. Mattio, 388 F. 2d 368 (2d Cir.), cert. denied, 390 U.S. 1043, 88 S.Ct. 1643, 20 L.Ed.2d 305 (1968).

■ The trial court did not err in failing to instruct the jury that it might infer from the failure of the government to call Joel Finkelstein, brother of Aaron Finkelstein, that his testimony would have been detrimental to the government's case. Such an instruction is unnecessary where it appears that the testimony will be only cumulative. United States v. Mosca, 475 F.2d 1052 (2d Cir.); cert. denied, 412 U.S. 948, 93 S.Ct. 3003, 37 L.Ed.2d 1001 (1973); United States v. Llamas, 280 F.2d 392 (2d Cir. 1960); United States v. Antonelli Fireworks, 155 F.2d 631, 638–639 (2d Cir.), cert. denied, 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946); DeGregorio v. United States, 7 F.2d 295, 296 (2d Cir. 1925).

---

1. The charge was as follows:
   The testimony of an accomplice is not to be rejected unless the jury thinks it is entitled to no weight; like any other testimony, it's to be taken up and considered and dealt with by the jury, by you who are triers of the fact.
   If accomplices could never be used, of course, there would be many cases involving real and serious guilt in which convictions would not be obtainable. Their testimony, however, must be received with caution and weighed with care and given such weight as you deem it entitled to receive under all of the circumstances of the entire case.

 Failure of the court more fully to define the terms "unlawfully" and "wilfully" was not improper. Those elements were not disputed by the defendant.

 Nor was it error for the court to focus in its supplemental charges on the testimony of the government agents and the defendant regarding defendant's statements inside the hotel room. The questions of the jury made it clear that it was most concerned with this portion of the testimony and thus it was proper for the judge to address himself to it. Citing United States v. Hayward, 136 U.S.App.D.C. 300, 420 F.2d 142 (1969), appellant also argues that the judge's charges in effect directed a verdict. We think a fair reading of the charge indicates the contrary.

 Finally appellant objects to the *Allen*-type [2] charge which was given when the jury reported that it had failed to reach a verdict. The charge resembled those which this court has repeatedly upheld. See United States v. Jennings, 471 F.2d 1310, 1313–1314 (2d Cir.), cert. denied, 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed.2d 395 (1973); United States v. Martinez, 446 F.2d 118 (2d Cir.), cert. denied, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 259 (1971); United States v. Bowles, 428 F.2d 592, 595–96 (2d Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970); United States v. Meyers, 410 F.2d 693, 697 (2d Cir), cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 86 (1969). In this case, however, appellant urges that the charge was coercive because the judge stated that "our law requires a retrial unless the jury is unanimous." Of course, avoidance of a retrial is the basic reason for the *Allen* charge. See United States v. Jennings, supra. Similar statements have been upheld. Hale v. United States, 435 F.2d 737, 739 n.1 (5th Cir. 1970), cert. denied, 402 U.S. 976, 91 S.

Ct. 1680, 29 L.Ed.2d 142 (1971). Appellant has not explained and we cannot see how this statement of fact could have prejudiced the jury.

Affirmed.[3]

---

2. Allen v. United States, 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

3. Appellant has also appealed the refusal of the lower court to reinstate bail. In light of our affirmance of the conviction we, of course, also refuse to order reinstatement of bail.