UNITED STATES of America, Appellee,

v.

John Gregory ARDITO and Vincent Pollina, Defendants-Appellants.

Nos. 393, 394, Docket Nos. 85–1271, 85–1272.

United States Court of Appeals, Second Circuit.

Argued Nov. 6, 1985.

Decided Jan. 31, 1986.

Arnold E. Wallach, New York City (Peter J. Peluso, New York City, on the brief), for appellant Ardito.

John R. Gulash, Jr., Bridgeport, Conn., for appellant Pollina.

William C. Bryson, Atty., Dept. of Justice, Washington, D.C. (Alan H. Nevas, U.S. Atty., New Haven, Conn., and John H.

Durham, Sp. Atty., Dept. of Justice, New Haven, Conn., on the brief), for appellee.

Before FRIENDLY, TIMBERS and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants John Gregory Ardito and Vincent Pollina appeal from judgments of conviction entered July 11, 1985 in the District of Connecticut, T.F. Gilroy Daly, *Chief Judge.* Following a jury trial, appellants were convicted of conspiracy to obstruct justice, in violation of 18 U.S.C. §§ 371, 1503 (1982).

We find that the principal issue on appeal arises from appellants' assertion that the obstruction of justice statute, 18 U.S.C. § 1503, requires proof that appellants knew the proceeding they obstructed was a federal proceeding. We hold that § 1503 does not require the government to prove that the proceeding which appellants were charged with having obstructed was known by appellants to be federal in nature. Other subordinate issues are raised.

For the reasons set forth below, we affirm.

I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellants were convicted of conspiracy to obstruct justice because of their out-of-court activities during the trial of Francis and Gus Curcio. After the conclusion of the trial of the Curcios in Hartford for loansharking before a jury and T. Emmet Clarie, *District Judge,* appellants were indicted on August 30, 1984 for conspiring to aid the Curcios in obtaining a mistrial. The Curcios also were indicted in the instant case for conspiring to obstruct justice. They pleaded guilty before trial. Our Court previously has dealt with various aspects of the Curcio loansharking case. *See United States v. Curcio,* 712 F.2d 1532 (2 Cir.1983); *United States v. Curcio,* 694 F.2d 14 (2 Cir.1982); *United States v. Curcio,* 680 F.2d 881 (2 Cir.1982).

The Curcio loansharking trial before Judge Clarie was plagued by a number of interruptions. The government presented its case between October 4 and October 19, 1983. Late in the evening of October 20, the first day of defendants' case, defendant Gus Curcio checked into a hospital complaining of chest pains. The next morning, he checked out of the hospital. The court granted a postponement to allow for a further medical examination. On the day that trial resumed, October 27, Gus Curcio, who was seated at the defense table and in the presence of the jury, appeared to suffer a heart attack, clutching his throat and chest. Believing that a prosecutor was smiling at the outburst, co-defendant Francis Curcio charged at the prosecutor. At this point, Judge Clarie adjourned the trial and appointed a cardiologist to examine Gus Curcio. The examination was inconclusive, and the Curcios moved for a mistrial on November 8. Judge Clarie denied the motion and, after an angiogram was arranged for Gus Curcio and indicated no heart malfunction, ordered the trial to resume on November 15. On November 15, defense counsel reported that Francis Curcio had been injured in an automobile accident. Judge Clarie denied another motion for a mistrial. Francis Curcio attended the remainder of the trial in a wheelchair. The Curcio loansharking trial was ultimately resumed on December 6, with the presentation of evidence completed on December 8 and a verdict of guilty returned by the jury on December 14, 1983.

During the Curcio loansharking trial, the government conducted electronic surveillance at various locations, including a social clubhouse in Bridgeport, Connecticut, and premises in the Bronx occupied by appellant Ardito. Two conversations relating to the Curcio trial were introduced as evidence at appellants' obstruction of justice trial.

In a November 4, 1983 conversation between appellant Pollina and the Curcios at the Bridgeport clubhouse, the discussion included the loansharking trial, the desire for postponements and a mistrial, and the

loansharking business. Appellants Ardito and Pollina also were overheard in a December 7, 1983 conversation which took place in the Bronx. Appellants discussed the Curcio trial. Ardito handed Pollina three pills and instructed Pollina to give them to the Curcios. Ardito also gave Pollina an inhalant that he described as benzadrine, a type of amphetamine, for one of the Curcios to take. The pills were designed to cause one of the Curcios, presumably Gus, to vomit in court. The December 7 conversation also included loansharking business information that Ardito wanted relayed to the Curcios.

A government attorney reported the December 7 conversation to Judge Clarie on December 8, the last day of the Curcio trial. Judge Clarie warned the parties that further disturbances in the courtroom would result in revocation of the Curcios' bail. No further disruptions occurred.

At appellants' obstruction of justice trial, the recorded conversations of November 4 and December 7 were played for the jury. A toxicologist testified on behalf of the government regarding the effect of amphetamines in inducing the symptoms of a heart attack and the effect of the drug Mettryl in inducing vomiting. An FBI agent defined such terms as "captain", "capo", "regime", and "crew"—terms which the jury had heard on the tapes. Appellants presented no evidence at the trial.

The jury returned guilty verdicts as to each appellant. The court sentenced each appellant to five years imprisonment and a $10,000 fine. Appellants are serving their sentences.

## II.

The principal issue raised on appeal is whether 18 U.S.C. § 1503 requires proof that appellants knew that the proceeding they were charged with having obstructed was federal in nature. At trial, appellants requested such a jury instruction which Judge Daly denied. The tape recorded conversations which the government introduced at trial did not contain any statements which would suggest that appellants knew that the Curcios were being tried in a federal court. Appellants did not attend the Curcio trial in the federal court at Hartford.

Section 1503 does not provide for the scienter requirement which appellants urge upon us. They were charged under the following provision of the statute:

"Whoever ... corruptly ... endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

18 U.S.C. § 1503. Both sides agree that the legislative history of § 1503 is not dispositive of the scienter controversy. Although appellants argue that Congress' express prohibition of knowledge of the federal nexus as an element of the offense under § 1512 shows that Congress knew how to prohibit such a scienter requirement when it wanted to, we find that argument unpersuasive in light of the fact that the present § 1503 has remained substantially unchanged since the enactment of its first predecessor in 1831, *see* Act of March 2, 1831, ch. 99, § 2, 4 Stat. 487, 488, and § 1512 was enacted only recently, in 1982.

Appellants rely primarily on *Pettibone v. United States*, 148 U.S. 197 (1893), in support of their assertion that § 1503 contains such a scienter requirement. The *Pettibone* Court, in interpreting a predecessor statute to § 1503, stated that "a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court." *Id.* at 206. *Pettibone* reversed convictions under the obstruction statute then in effect because the indictment did not charge that the purpose of the conspiracy was to violate an injunction or interfere with proceedings in the circuit court. While the circuit court had enjoined members of a labor union from interfering with a mining company's management, the indictment failed to

charge that union members were aware of the injunction.

We examined the *Pettibone* decision in *United States v. Jennings*, 471 F.2d 1310 (2. Cir.), *cert. denied*, 411 U.S. 935 (1973). In holding that 18 U.S.C. § 201(b)(1) (anti-bribery statute) does not require knowledge that the bribee was a federal official, we interpreted *Pettibone* as follows:

> "[A] closer reading makes clear that the court was concerned with the necessity for charging knowledge or notice of the existence of the injunction, *as distinguished from its federal character."*

471 F.2d at 1313 (emphasis added). In the instant case, we hold that the government was required to prove only that appellants conspired to interfere with the administration of justice, not that they knew which sovereign, federal or state, was administering that justice in the Curcio trial.

We also find unpersuasive appellants' reliance on cases which have arisen in other courts under § 1503. In *United States v. Baker*, 494 F.2d 1262 (6 Cir.1974), the defendant was charged with violating § 1503 as the result of his having threatened a police officer who planned to testify in a federal proceeding. The Sixth Circuit, however, held that there was insufficient evidence to establish that the threat related to the officer's testimony in a federal proceeding. There the officer had arrested the defendant several times. The officer's testimony in the federal proceeding was not the only conduct to which the threat could have applied. *Id.* at 1265. As the court stated, "[t]he mere existence of that federal proceeding is not sufficient to establish or support any inference that the federal proceeding was the focus of the alleged threat." *Id.* In *Baker* the issue was whether the proceeding which the defendant intended to influence by threatening a witness was federal or not, not whether the defendant *knew* that it was federal.

In the instant case there is no doubt that the subject of appellants' discussions and the provision of vomit-inducing medication related to the pending criminal prosecution against the Curcios in the federal court. That appellants did not know (or their conversations did not suggest that they knew) in which court the Curcios were being tried does not preclude their being convicted under § 1503.

■ Similarly, the issue in *United States v. Vesich*, 724 F.2d 451 (5 Cir.1984), was whether proceedings in fact were pending and whether the defendant had knowledge of such proceedings, not whether the defendant *knew* such proceedings to be federal in nature. As the *Vesich* court stated, "[a] prerequisite to any violation of section 1503 is the existence of a pending judicial proceeding known to the violator." *Id.* at 454 (citing *Pettibone, supra*, 148 U.S. at 205–07; *Odom v. United States*, 116 F.2d 996, 998 (5 Cir.), *rev'd on other grounds*, 313 U.S. 544 (1941)). The specific concerns of the *Vesich* court were whether grand jury proceedings in fact were pending, and whether there was sufficient evidence to establish that the defendant knew such proceedings were pending and that the witness he wished to influence was to testify before that body. While dicta in *Baker* and *Vesich* incidentally may merge the jurisdictional and scienter discussion because of the specific facts in those cases, they do not persuade us that, where a single judicial proceeding is known to be pending, the government must establish that appellants knew that justice was being administered in a federal court.

■ Our refusal to add to the statute a scienter requirement, in the absence of congressional intent to the contrary, is consistent with the Supreme Court's analyses of other statutes in *United States v. Feola*, 420 U.S. 671 (1975), and *United States v. Yermian*, 104 S.Ct. 2936 (1984). In a prosecution under the federal assault statute, 18 U.S.C. § 111, the *Feola* Court held that the statute does not require proof that the defendant knew the victim was a federal officer. "The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum." 420 U.S. at

685. *Feola* also made clear that the conspiracy statute, 18 U.S.C. § 371, does not require a showing that the defendant knew his conduct violated federal law. *Id.* at 687. And in *Yermian,* in holding that the federal false statements statute, 18 U.S.C. § 1001, does not include a scienter requirement with respect to the federal nexus, the Court concluded that " 'the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.' " 104 S.Ct. at 2940 (quoting *Feola,* 420 U.S. at 676–77 n.9). Indeed, the case for not requiring knowledge of the federal nexus is easier here than in *Feola* or *Yermian,* since the omnibus clause of § 1503, under which appellants were convicted, does not even mention federal jurisdiction.

We therefore hold that, while "the existence of an ongoing proceeding is an element of a § 1503 violation", *United States v. Reed,* 773 F.2d 477, 485 (2 Cir.1985), as is an intent to impede the administration of justice, *United States v. Buffalano,* 727 F.2d 50, 54 (2 Cir.1984) (citing *United States v. Moon,* 718 F.2d 1210 (2 Cir.1983), *cert. denied,* 466 U.S. 971 (1984)), the statute does not require a specific intent to interfere with a proceeding known by the defendant to be federal in nature. *United States v. Jennings, supra.*

### III.

Appellants' other claims of error are without merit and only three require brief mention.

■ Both appellants assert that the "endeavor" which they were charged with conspiring to commit terminated when Gus Curcio sustained an apparent seizure in court on October 27, 1983; and that the subsequent conversation of December 7, 1983, and the provision of the emetic, therefore, were not encompassed under the conspiracy charge. In support of this claim, appellants rely on the language in *United States v. Minkoff,* 137 F.2d 402, 404 (2 Cir.1943), that "[t]he offense was complete, regardless of success, when the first

overt act to carry it out was committed." This misconstrues the law of conspiracy. The reference to "complete" refers to the point at which a viable conspiracy charge existed; it does not mean that acts subsequent to the first overt act cannot be prosecuted. *United States v. Perlstein,* 126 F.2d 789, 798 (3 Cir.), *cert. denied,* 316 U.S. 678 (1942). The conspiracy count here properly encompassed activities which occurred during the presentation of evidence at the Curcios' trial, which ended on December 8, 1983.

■ Prior to the trial of the instant case, appellants moved to suppress the evidence obtained by electronic surveillance on the grounds that the warrant issued for the surveillance did not list obstruction of justice as a possible violation and the government did not comply with the sealing requirements of 18 U.S.C. § 2518(8)(a) (1982). On December 9, the government reported the contents of the December 7 conversation, explicitly detailing the evidence relating to the § 1503 violation, to Robert W. Sweet, *District Judge,* who authorized an extension of the time period for electronic surveillance. In *United States v. Masciarelli,* 558 F.2d 1064, 1067–68 (2 Cir.1977), we held that authorization under 18 U.S.C. § 2517(5) may be inferred when a judicial officer grants a continuation of the surveillance, even though the offense was not listed in the original order, so long as he was made aware of "material facts constituting or clearly relating to [the] other offenses" in the application for the continuance. *See United States v. Tortorello,* 480 F.2d 764, 781–83 (2 Cir.), *cert. denied,* 414 U.S. 866 (1973); *United States v. Marion,* 535 F.2d 697, 703–04 (2 Cir.1976). These requirements were amply satisfied here. Furthermore, the fact that the government did not present the recordings for sealing until January 5, 1984, five days after the first surveillance period expired, did not violate 18 U.S.C. § 2518(8)(a) which requires that such recordings be made available to the judge "[i]mmediately upon the expiration of the period of the order". The

intervening two-day holiday, the unavailability of the judge who issued the surveillance order for a third day, the need for the agent to prepare the paperwork for the extension of the surveillance, and the absence of prejudice, all combine to excuse the relatively short period of delay here in question. *See United States v. McGrath,* 622 F.2d 36, 42–43 (2 Cir.1980) (eight day delay excused).

 Appellants also assert that the court erred in admitting the expert testimony of an FBI agent who described such terms as "captain", "capo", "regime" and "crew". That testimony aided the jury in its understanding of the recorded conversations, and helped establish the relationship between appellants and the Curcios as well as appellants' interest in disrupting the Curcio trial. Moreover, Judge Daly specifically cautioned the jury as to the limited purpose of the agent's testimony and that the indictment did not charge conduct relating to organized crime activities. We hold that there was no abuse of discretion in the court's determination that the probative value of the agent's testimony outweighed any potential prejudice. *See United States v. Riccobene,* 709 F.2d 214, 230–31 (3 Cir.), *cert. denied,* 464 U.S. 849 (1983) (explanation of organized crime terms allowed).

We have considered carefully all of appellants' claims of error and we hold that all are without merit.

### IV.

To summarize: Under 18 U.S.C. § 1503 the government need not establish that the proceeding which appellants were charged with having obstructed was known by appellants to be federal in nature. We decline to add to the statute a scienter requirement that a person know which sovereign, federal or state, is administering the justice which he is charged with having impeded. We hold that appellants' other claims of error are without merit.

Affirmed.