UNITED STATES of America,
Appellee,

v.

John MINGOIA and Herbert Richman,
Appellants.

Nos. 589–90, Dockets 33849, 34518.

United States Court of Appeals,
Second Circuit.

Argued March 11, 1970.

Decided April 21, 1970.

Richard I. Rosenkranz, New York City, for appellant Mingoia.

Frank McGlynn, Woodside, N. Y., for appellant Richman.

Roger A. Pauley, Atty., U. S. Dept. of Justice, Washington, D. C. (Edward R. Neaher, U. S. Atty. for the Eastern District of New York, on the brief), for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge.

John Mingoia and Herbert Richman appeal from judgments of conviction entered after a jury trial in the United States District Court for the Eastern District of New York. Appellants and ten others [1] were indicted for the substantive offense of causing a stolen check worth more than $5,000 to be transported in interstate commerce in violation of 18 U.S.C. § 2 (1964) and 18 U.S.C. § 2314 (Supp. IV 1965–68),[2] and for conspiring to cause the same check to be transported in interstate commerce in violation of 18 U.S.C. § 371 (1964). Mingoia was acquitted by the jury of the substantive offense but was convicted of conspiracy. Richman was acquitted by the court of conspiracy but was convicted of the substantive offense. Mingoia and Richman were both sentenced to three years' imprisonment, but Richman's sentence was suspended and he was placed on probation for three years. We affirm the convictions.

I.

The government sought to prove that appellants participated in a scheme to steal customers' checks from Orvis Brothers, a brokerage firm in New York City. The stolen checks were to be deposited in fictitious Orvis Brothers accounts and the proceeds withdrawn after the checks had cleared. One such check, which is the subject of both counts of the indictment, was drawn on an out of state bank, a fact sufficient to establish the statutory requirement of transportation in interstate commerce. Pereira v. United States, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

Two groups were involved in the scheme. The first group were to steal the checks from Orvis Brothers; the second group were to arrange for depositing the checks and withdrawing the funds. The evidence tended to connect Mingoia with the first group and Richman with the second group.

II.

*Mingoia's Appeal*

Mingoia contends that the evidence was insufficient to establish his participation in the conspiracy. He was implicated mainly by one Negri, an unindicted co-conspirator who testified that on February 17, 1967, Mingoia met with him and other co-conspirators at a Manhattan hotel. Several other witnesses also placed Mingoia at this meeting. Negri stated that they discussed whether the group who stole the first batch of checks should receive payment before they delivered additional checks, and that everyone, including Mingoia injected something into the conversation. Before the meeting was terminated, ar-

1. Two of the co-defendants were acquitted. Four pleaded guilty to the conspiracy count. Four were found guilty of conspiracy but acquitted of the substantive crime. Four defendants filed notices of appeal but only Mingoia and Richman have perfected their appeals.

2. 18 U.S.C. § 2314 provides in pertinent part:

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud

\* \* \* \* \* \* \*

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

rangements were made to meet the next day at a bar on Staten Island.

■ The meeting took place the next day as scheduled and Negri testified:

"And when we arrived * * * John Mingoia [was there] and we started discussing this thing again. But at this time they [Mingoia and his group] didn't have any checks, or the man hadn't shown up the night before, they would see him later in the day, and * * *

"Mingoia would see him later in the day and he would get the checks, and then we would get them in return."[3]

■ Taking the view of the evidence most favorable to the government, as we are required to do, we hold that it was sufficient to establish Mingoia's guilt on the conspiracy count. See Glasser v. United States, 315 U.S. 60, 80–81, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Kahaner, 317 F.2d 459, 467 (2d Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963).

■■ Mingoia contends further that even if there was sufficient evidence to connect him to the conspiracy there was no showing that he knew the checks would be transported in interstate commerce. However, actual knowledge that a stolen item will be transported in interstate commerce is not required to sustain a conviction for conspiracy to violate 18 U.S.C. § 2314. It is enough if de-fendant agrees to participate in a scheme which by its nature involves transportation in interstate commerce and such transportation actually occurs. See Nassif v. United States, 370 F.2d 147, 153 (8th Cir. 1966); United States v. Crimmins, 123 F.2d 271, 273–274 (2d Cir. 1941). The jury could find from the evidence presented that Mingoia was aware that the checks stolen in the course of the conspiracy of which he was a part would include checks drawn on out of state banks.

Mingoia also argues that the admission of prior inconsistent statements of a government witness named Paulsen was prejudicial error and that an instruction to the jury to consider these statements only for impeachment purposes was insufficient to correct the error.

Paulsen was a margin clerk with Orvis Brothers. He testified before the grand jury and stated in an interview with the F.B.I. that he stole the checks involved in the present conspiracy and that he had discussed the matter with Mingoia. At the trial he testified that, while he knew Mingoia, he never had any conversations or dealings with him concerning stolen checks.

The government was permitted to treat Paulsen as a hostile witness and to impeach him with his prior statements. When confronted with the contradiction between his earlier statements and his testimony at the trial, Paulsen stated that the earlier statements were false.

---

3. At the close of the evidence appellant moved to strike this testimony. He argued that Negri's statement that Mingoia would get more checks might have been based on what one of the other conspirators said, or on Negri's unwarranted understanding as to what would take place. The trial court denied the motion, ruling that it was a fair inference that Negri's testimony was a short form of relating what was said at the time, and that had a motion to strike been timely made the prosecutor could have acted to put the evidence in a more appropriate form. We think that this testimony was properly received. Since there was independent evidence of Mingoia's participation in the conspiracy, even if the statement that he would obtain more checks had been made by one of the co-conspirators, it would have been admissible as a declaration made in furtherance of the conspiracy. United States v. Ragland, 375 F.2d 471, 476–477 (2d Cir. 1967), cert. denied, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968); United States v. Pugliese, 153 F.2d 497, 500 (2d Cir. 1945).

After the government concluded its case, the prosecutor advised the court that he did not desire to use Paulsen's prior statements as affirmative evidence but only to impeach his testimony at trial. The trial court so instructed the jury in the charge, which was given twelve days after Paulsen concluded his testimony.

■ Mingoia points to dictum in United States v. De Sisto, 329 F.2d 929, 933 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964), which suggests that a jury may be incapable of viewing prior testimony in this limited way. See, however, United States v. Nuccio, 373 F.2d 168, 171–173 (2d Cir.), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967). However, De Sisto holds that in circumstances such as are involved in the instant case grand jury testimony is admissible for the jury's consideration as affirmative evidence. 329 F.2d at 934; United States v. Insana, 423 F.2d 1165, 1169–1170 (2 Cir., 1970). Although Paulsen's statements to the F.B.I. would not be admissible as affirmative evidence of guilt under De Sisto, those statements contained the same material as his grand jury testimony. There was no error in admitting the challenged testimony and, at least as to the prior grand jury testimony, the trial judge's instruction was more favorable to Mingoia than he was entitled to get.

### III.

*Richman's Appeal*

None of the co-conspirator witnesses for the government mentioned Richman and the court directed his acquittal on the conspiracy count. He was implicated on the substantive count through the testimony of one Gurney, an assistant treasurer at the Jamaica, Queens, branch of the Marine Midland Grace Trust Company of New York. Gurney testified that on March 1, 1967, Richman, representing himself to be Edward Orvis, opened an account in the name of Orvis Brothers. The next day an unidentified person deposited a stolen check in the Orvis Brothers account opened by Richman. On March 8, 1967, Richman telephoned Gurney and asked him to prepare a check drawn on the Orvis Brothers account made payable to the Amerian Express Company. Gurney asked Richman to come in personally to transact this business. He did so and, after signing the name Edward Orvis on a check which was to be exchanged for the check made payable to the American Express Company, Richman was arrested.

■ Richman contends that, while there was evidence to show that he knew the check in question was stolen, no evidence was introduced to establish that he knew it was transported in interstate commerce. With respect to Mingoia's appeal we found that the jury could infer the existence of a connection with interstate transportation required for a conviction on the conspiracy count from the nature of the conspiracy of which Mingoia was a part. The case against Richman is even stronger, since for conviction on the substantive charge proof of knowledge of interstate transportation is not required. United States v. Tannuzzo, 174 F.2d 177, 180 (2d Cir.), cert. denied, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949); United States v. Kierschke, 315 F.2d 315 (6th Cir. 1963).

■ Richman also argues that his indictment should have been dismissed because it was based on testimony he gave before the grand jury at a time when he was a target of the grand jury investigation. The grand jury minutes, which appear in the margin,[4] show that appel-

---

4. "HERBERT RICHMAN, having been first duly sworn, assumed his seat as a witness and testified as follows:

"*Examination by Mr. Hollman:*
    "Q. What is your name? A. Herbert Richman.

lant was advised that he was a target of the investigation and that he could decline to answer any questions which might incriminate him. He was therefore a proper witness before the grand jury. United States v. Capaldo, 402 F.2d 821, 823–824 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L. Ed.2d 764 (1969). Moreover Richman testified only that he appeared at the Marine Midland Bank on March 8, 1967, and the grand jury was instructed not to consider his answer.

■ The fact that other co-defendants pleaded guilty during trial did not deprive either appellant of a fair trial. See, e. g., United States v. Dardi, 330 F.2d 316, 323–333 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed. 2d 50 (1964); United States v. Crosby, 294 F.2d 928, 948–950 (2d Cir. 1961), cert. denied, sub nom. Mittelman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962).

Appellants' other claims of error are without merit.

We affirm the convictions.

"Q. Where do you reside? A. 81–11 45th Avenue, Elmhurst, New York.
"Q. Mr. Richman, you are appearing before a Federal Grand Jury at this time that are investigating certain violations that occurred in the Eastern District of New York. You are a potential defendant in this case and in all likelihood may be indicted. Realizing that and that anything that you say here before this Grand Jury could be used against you in a Court of law, you can exercise your Constitutional privilege if you wish and refuse to answer any questions if you feel that the answers to those questions may incriminate you of some violation. Do you understand that? A. Yes.
"Q. Do you have counsel in this case? A. Yes.
"Q. What is his name? A. Frank McGlynn.
"Q. At this stage of the proceeding do you wish—let me ask you this. Did you appear at the Marine Midland Bank on or about March 8th, 1967? A. Yes, sir.
"Q. Mr. Richman, we will assume that since you haven't conferred with counsel at this time the Grand Jury won't—you understand, of course, that you have the right to remain silent and not answer these questions? A. I believe so.
"Q. Since you are not familiar with your rights, I think before we question you any further we will permit you to consult with your counsel who said that he would be here about 10:00. It is now 12:00. He still hasn't appeared. So that we will refrain from considering your last answer. The Grand Jury will not consider it and we will permit you to leave at this time. Thank you very much.
"(Whereupon, the witness was excused and withdrew.)"