UNITED STATES of America
v.
Peter PEPE.
Crim. Nos. 13270 and 13271.

United States District Court,
D. Connecticut.

Dec. 19, 1973.

**1366**

Peter A. Clark, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Peter A. Treffers, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS AND TO DISMISS

NEWMAN, District Judge.

Defendant Pepe, indicted with a co-defendant on bank robbery charges in violation of 18 U.S.C. § 2113(a), (b),

and (d), has moved to suppress his grand jury testimony and to dismiss the indictment on the ground that his testimony was obtained in violation of the self-incrimination clause of the Fifth Amendment.

Pepe was called as a witness before the grand jury on April 23, 1973. At that time, the Government now alleges, there was no evidence before the grand jury implicating him in any criminal violations. However, the Government acknowledges that Pepe was a "suspect" in the crimes then being investigated by the grand jury. As the prosecutor acknowledged at the hearing on this motion, "We felt he had participated in those robberies."

Before being questioned, Pepe was advised as follows:

> Mr. Pepe, you understand that you have the right not to incriminate yourself in these procedings, and any time you feel an answer will incriminate you, you can decline to answer or testify on the grounds it will incriminate you.

Hearing this warning, Pepe inquired whether he had to "answer anything." His inquiry went unanswered.[1] At no time was Pepe advised that he was a suspect, target or potential defendant.

The prosecutor then asked a series of routine questions regarding Pepe's name, address, marital status, etc., all of which Pepe answered. He then inquired as to the name of Pepe's employer in 1972. In response to this and a number of subsequent questions, Pepe replied that he "would rather not say" or had "nothing to say," because he believed his answers would tend to incriminate him. Undaunted, the prosecutor continued the questioning, and ultimately the following exchange occurred:

> Q: Are you aware of the fact that you must file an income tax return if

---

1. The prosecutor's response was: "I am asking you if you understand you have that right?" Neither he nor Pepe understood "that right" to be the right to remain silent, i. e., to decline to "answer anything," as is indicated by the fact that on two later occasions in the questioning when Pepe responded "I would rather not say," the prosecutor asked: "You feel that would tend to incriminate you . . . ?"

you earn wages of more than $600 a year?

A: I have nothing to say.

Q: Where are some of the jobs you worked on in connection with your carpentry?

A: I have nothing to say.

Q: Mr. Pepe, are you aware you can be compelled to answer these questions?

A: My lawyer is not here.

Q: Would you like to go back and see the Judge and have him order you to answer these questions?

A: May I see my lawyer?

Q: You have the right to consult with an attorney after every question.

A: He is not here. How could I consult with him?

Q: You may ask an attorney to appear with you at the next session of the Grand Jury, if you like.

Now, Mr. Pepe, do you know Stuart Smith?

.    .    .    .    .    .    .

Pepe declined to answer this last question and several that followed, but subsequently gave responses to additional questions, mostly, but not entirely, of an exculpatory nature. No order compelling testimony under a grant of immunity was ever obtained nor sought. Later, when the questioning turned to details of the robberies, especially details that might implicate Pepe, he reiterated his preference not to answer. When this response blocked questioning as to how Pepe had obtained a blonde wig allegedly used in the commission of one of the robberies, the prosecutor again used his previous tactic:

> Are you aware, Mr. Pepe, you will be compelled to answer this question, and you will be compelled to come back here to answer that question unless you answer it now?

While the tactic did not produce a response to the then pending question, the prosecutor asked more questions covering an additional fifteen pages of transcript, and numerous responses were obtained, including some detail, but not the identity, of the person from whom Pepe bought the wig.

This extraordinary inquisition raises serious questions as to whether the defendant's grand jury testimony should be suppressed and the indictment dismissed for failure to warn him that he was a suspect, for failure to warn him that he had a right to remain silent, and for inducing him to answer questions by the threat of a non-existent immunity order.

■ In this Circuit a potential defendant is not immune from appearing as a witness before a grand jury. United States v. Sweig, 441 F.2d 114, 121 (2d Cir. 1971); United States v. Corallo, 413 F.2d 1306, 1328–1330 (2d Cir. 1969); United States v. Capaldo, 402 F.2d 821, 824 (2d Cir. 1968). Less certainty attends the question of the proper warning to be given such a witness. See 8 Moore's Federal Practice ¶ 6.06(1). Two issues arise: whether the witness must be told he is a potential defendant, and whether a warning as to Fifth Amendment rights should advise that he may remain silent or only that he may decline to give answers that might tend to incriminate him.

■ While no decision of this Circuit has found a violation of the self-incrimination clause for failure to warn a witness that he is a potential defendant, such a warning is regularly given and is surely the better practice. United States v. Mingoia, 424 F.2d 710, 714 (2d Cir. 1970) ("target of the investigation");[2] United States v. Corallo, *supra*, 413 F.2d at 1329 n. 6 ("subject of the investigation"); United States v. Capaldo, *supra*, 402 F.2d at 824 ("poten-

---

**2.** In observing that a witness thus warned was "therefore" a proper witness before the grand jury, *Mingoia* appears to make the "target" warning a requirement. *Id.,* 424 F.2d at 714.

tial defendant"); United States v. Irwin, 354 F.2d 192, 199 (2d Cir. 1965) ("subject of the investigation"). Unlike an arrested person, for whom the *Miranda* warning includes no similar advice, the grand jury witness does not necessarily know whether the accusatory process is about to center on him. His ability intelligently to consider invocation of his self-incrimination privilege is certainly enhanced by advice as to his status as a potential defendant.

The warnings that the Second Circuit has approved with respect to potential defendants have sometimes included a right to remain silent, e. g., United States v. Irwin, *supra*; United States v. Capaldo, *supra*, and sometimes only a right not to answer incriminating questions, e. g., United States v. Mingoia, *supra*; United States v. Cleary, 265 F. 2d 459 (2d Cir. 1959). In United States v. Corallo, *supra*, the opinion states that the warning included the right to remain silent, but the grand jury transcript in-

dicates the warning referred only to incriminating answers.[3] 413 F.2d at 1328, 1329, n. 6. See also United States v. Scully, 225 F.2d 113, 116–120 (2d Cir. 1955), in which Judge Frank, concurring, appears to state that the "target of a prospective criminal action," as well as a defendant, should be accorded a right to remain silent before a grand jury.

■ Whether a potential defendant before a grand jury has a right to remain silent or only to refuse to answer incriminating questions may depend on whether his situation is analogous to that of a defendant at trial and an arrested accused, who may remain silent,[4] or to that of the ordinary grand jury witness whose self-incrimination privilege does not include a right of silence.

There is much to be said for according the potential defendant before the grand jury a right to remain silent. He is virtually as much under "focus" as the arrested suspect during stationhouse in-

3. *See also* United States v. Mingoia, 424 F.2d 710, 713–714 n. 4 (2d Cir. 1970), where the opinion says the defendant was given the right not to answer incriminating questions, while the transcript of the prosecutor's warning indicates that he was told that he had "the right to remain silent," as well as "not answer these questions."

4. The reasoning that supports this right is not necessarily the same for both situations. The defendant at trial is privileged not to take the witness stand at all because any relevant question might tend to incriminate him, 8 Wigmore, Evidence, § 2260 at 369 (McNaughton rev. 1961), and merely compelling him to be sworn as a witness and to invoke the privilege before the jury might spawn incriminating inferences, and thereby undermine the constitutional protection. Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893, 898 (1963); United States v. Agueci, 310 F.2d 817, 830–831 (2d Cir. 1962); United States v. Scully, *supra*, 225 F.2d at 115; 8 Wigmore, *supra*, § 2268 at 406; McCormick, Evidence, § 122 at 257–58 (1954). An arrested accused's right of silence stemmed initially from a desire to accord complete protection against self-incrimination when a person is confronted with an accusation of crime. *See* Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 977 (1964); Bram v. United States, 168 U.S. 532, 562, 18

S.Ct. 183, 42 L.Ed. 568 (1897). Without a right of silence, the accusation of crime may evoke an incriminating statement even if no questions are asked. More recent decisions have relied increasingly on a second rationale relating to concern about the privilege when a person is in "custody" or "otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed. 2d 694 (1966). The *Miranda* rationale emphasized that the privilege might easily be diluted if the suspect had to decide which questions to answer under the circumstances of stationhouse interrogation—in isolated and unfamiliar surroundings, subject to prolonged planned interrogation and therefore susceptible to physical or psychological coercion. On a broader concept of "custody," the right of silence has been extended to individuals questioned in their own homes whenever they are "not free to leave," Orozco v. Texas, 394 U.S. 324, 327, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), and to prisoners interviewed by agents of the Internal Revenue Service while they are confined, Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). A third rationale for a right to silence during police interrogation is that the police lack compulsory process and (unlike courts or grand juries) do not have the right to every man's testimony.

terrogation and, substantively if not formally, as the defendant at trial. See Marcello v. United States, 196 F.2d 437, 441 (5th Cir. 1952); Maffie v. United States, 209 F.2d 225, 228–229 (1st Cir. 1954); *cf.* United States v. Dickerson, 413 F.2d 1111, 1114 (7th Cir. 1969). He may be no more free to leave than he would be during questioning by police, *cf.* United States v. Bekowies, 432 F.2d 8, 13 (9th Cir. 1970), and the setting may be comparably "foreboding" and "totally one-sided," United States v. Kreps, 349 F.Supp. 1049, 1053 (W.D.Wis.1972). The causes of psychological compulsion inherent in "custody"—isolation, an unfamliar setting, prolonged and well-prepared questioning—are also present in the grand jury context. Although there is scant likelihood of physical abuse in the presence of grand jurors, a prosecutor may easily lure a witness into compromising his claims of privilege, as this case strikingly shows.

Moreover, the grand jury witness lacks a protection of paramount importance—the presence of counsel—guaranteed to individuals who are brought to trial or questioned by police. The grand jury proceeding is a "critical stage" in the criminal process for the potential defendant. And counsel's contribution to protecting the privilege, which *Miranda* sought to assure in the police station, would have equal force in the grand jury room. Requiring the witness to exit each time he feels the need of his attorney's advice is not necessarily an adequate substitute for the presence of counsel. The witness must rely on his own ability to recognize the incriminating potential in a question, and decide when he thinks he needs to consult with counsel outside the grand jury room. Moreover, this exiting for consultation inevitably has some prejudicial effect.

However, there are some reasons for considering the potential defendant before the grand jury to be less entitled to a right of silence than an arrested suspect or a defendant at trial. While he suffers some prejudice in the grand jurors' eyes by exiting each time he consults with counsel, the effect is less troublesome because they are not deciding his guilt or innocence. Moreover, he is not inevitably confronted with an accusation, even though he is a potential defendant. The scope of grand jury inquiry is properly a broad one, and the potential defendant might be questioned only as a source of evidence as to the guilt of others. Such inquiry may well encounter a valid assertion of the witness's self-incrimination privilege, but not inevitably. As a practical matter, the witness's Fifth Amendment rights may be protected equally well by according him only a right not to answer questions that might tend to incriminate him, rather than a right of absolute silence, since he may invoke the privilege for *all* the questions and put the burden on the prosecutor to seek a court order compelling responses to specific inquiries. In the court proceeding, he will have full advice and representation of counsel, and a strong claim, in view of his status as a potential defendant, that most questions might tend to incriminate him.

While in this case it would have been preferable to have advised Pepe that he was a potential defendant and at least to have given a direct answer to his inquiry as to whether he could remain silent, it is not necessary to decide precisely what form of warning must be given to potential defendants before a grand jury. Whatever deficiencies there were in the warning need not be assessed alone, because the prosecutor's subsequent tactic constituted a gross violation of the witness's constitutional rights.

■ The prosecutor told the witness that he should answer because the prosecutor could otherwise obtain a court order compelling a response. Apparently, the prosecutor had in mind a request for use immunity. See 18 U.S.C. § 6001 et seq. Obviously, such "advice" is a flagrant circumvention of the immunity statute as well as an impairment of the self-incrimination privilege. The prosecutor obtained answers to his questions by threatening to obtain an immunity order but failed to give the witness

the protection of such an order. Moreover, there is no reason to assume that the witness understood the implied content of the threat. For all that appears, he would have been justified in concluding that he had to answer the questions on pain of being held in contempt for failing to answer. He was told, "[Y]ou will be compelled to come back here to answer that question unless you answer it now." In fact, he had a constitutional right not to answer for the questions plainly tended to incriminate him. The violation of constitutional right is plain, and the testimony thereby obtained must be suppressed.

██ Whether the indictment should be dismissed as to Pepe is less certain. There is no doubt that a court has discretion to dismiss an indictment obtained through a violation of a defendant's constitutional rights, United States v. Lawn, 115 F.Supp. 674 (S.D.N.Y. 1953), although such a result is surely not required, Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); see Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1909), at least where, as here, the incompetent evidence is not the sole evidence before the grand jury. Useful guidance on this question is furnished by Judge Clark's opinion in United States v. Cleary, *supra*. In reversing a district court that had dismissed an indictment because of impairment of the self-incrimination privilege, the Court observed:

> The important factor is the lack of even the slightest suggestion that government officials applied any pressure or engaged in any form of misconduct which contributed to (the witness's) testifying. *Id.* 265 F.2d at 462.

Unhappily that cannot be said here. While not every impairment of constitutional right stems from governmental misconduct, the flagrant abuse here fully justifies the sanction of dismissal of the indictment.

Fortunately for the Government, the statute of limitations has not run with respect to the offenses charged, and no reason presently appears why the Government cannot proceed to seek a new indictment before a different grand jury in conformity with the procedure approved by the Supreme Court in Lawn v. United States, *supra*, 355 U.S. at 246, 78 S.Ct. 406; see also *id.* at n. 9 for a useful procedure to safeguard any subsequent indictment.

Accordingly, the motion is granted, the defendant Pepe's grand jury testimony is ordered suppressed, and the indictment as to him is dismissed, without prejudice.