UNITED STATES of America, Appellee,

v.

Earl Lawrence SQUIRES, Appellant.

No. 77-1802.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1977.

Decided Aug. 15, 1978.

Michael H. Dills, Norfolk, Va., for appellant.

Stephen Wainger, Asst. U. S. Atty., Norfolk, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., and William John Ginivian, Third Year Law Student on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and FIELD, Senior Circuit Judge.

HAYNSWORTH, Chief Judge:

The defendant appeals from his convictions on ten counts, charged in two separate indictments, of violating the National Stolen Property Act, 18 U.S.C.A. § 2314. Except with respect to the matter mentioned

in footnote 12, we find no error in the convictions on the counts charged in Indictment 77–3–N. But with respect to Indictment 77–2–N, we conclude that the defendant committed only one substantive offense, rather than five, and that his convictions on the last four counts of that indictment must be reversed.

## I. Indictment 77–3–N

The four offenses charged in Indictment 77–3–N were based on Squires' sale of 10,-000 counterfeit cashier's checks and a Paymaster check-writing machine to an undercover FBI agent.[1] Only one of his contentions merits substantial discussion.[2]

Squires contends that the evidence presented at trial was insufficient to prove a *conspiracy* to violate 18 U.S.C.A. § 2314, as charged in Count One of Indictment 77–3–N, because his co-conspirators supposedly did not know that Squires would transport the counterfeit cashier's checks in interstate commerce. We reject that contention on the ground that such knowledge is not required by § 2314 or the conspiracy statute, 18 U.S.C.A. § 371. The absence of such knowledge does not disprove the existence of a conspiracy.

The evidence amply supported the jury's conclusion that Squires had conspired with Joseph Shelton to print the 10,000 cashier's checks to Squires' specifications and that Squires later transported the checks that Shelton had printed from Virginia into North Carolina to complete Squires' sale. The evidence also probably justified a conclusion that the printer actually knew, or should have known, that the counterfeit checks would be transported in interstate commerce. We do not know that the jury found that as a fact, however, but we hold that such knowledge or intent generally is not required by § 2314 or by the conspiracy statute, § 371, for proof of these offenses.

■ The third paragraph of § 2314 provides for punishment of a person who "with unlawful or fraudulent intent, *transports in interstate* or foreign *commerce* any falsely made, forged, altered or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered or counterfeited." (Emphasis added). Many courts have held that this substantive offense does not require proof that a defendant intended to transport counterfeit securities in interstate commerce.[3] The requirement of transportation in interstate commerce was adopted only to provide a basis

---

1. Count One of this indictment charged Squires with conspiring to commit the substantive offense defined by the third paragraph of 18 U.S.C.A. § 2314, in violation of 18 U.S.C.A. §§ 2, 371, 2314. Counts Two and Three charged Squires with committing the substantive offense that is prohibited by the third paragraph of § 2314. Count Four alleged that Squires had transported in interstate commerce a "tool, implement, or thing" to be used in counterfeiting securities, in violation of 18 U.S.C. § 2 and the fifth paragraph of § 2314. After the jury returned a verdict of guilty on these counts, the district judge sentenced the defendant to four five-year terms that would run concurrently with the five-year sentence the judge imposed for Count One of Indictment 77–2–N.

2. We conclude that the 10,000 cashier's checks sold by Squires were sufficiently complete to be considered "securities" within the meaning of § 2314, that the jury instructions on the entrapment defense were proper and the verdict was reasonable, and that § 2314 can be applied to punish Squires' transportation of the

Paymaster check-writing machine, given his clear intentions for the use of the machine.

3. *United States v. Strauss,* 443 F.2d 986 (1st Cir.), *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971); *United States v. Mingoia,* 424 F.2d 710, 713 (2d Cir. 1970); *United States v. Tannuzzo,* 174 F.2d 177, 180 (2d Cir.), *cert. denied,* 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949); *United States v. White,* 451 F.2d 559 (6th Cir. 1971), *cert. denied,* 405 U.S. 1071, 92 S.Ct. 1522, 31 L.Ed.2d 804 (1972); *United States v. Kierschke,* 315 F.2d 315 (6th Cir. 1963); *United States v. Wilson,* 523 F.2d 828, 829 (8th Cir. 1975); *United States v. Ludwig,* 523 F.2d 705 (8th Cir. 1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976); *United States v. Masters,* 456 F.2d 1060 (9th Cir. 1972); *United States v. Powers,* 437 F.2d 1160 (9th Cir. 1971); *United States v. Roselli,* 432 F.2d 879, 890–91 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *United States v. Newson,* 531 F.2d 979, 981 (10th Cir. 1976); *see United States v. Johnson,* 514 F.2d 431 (3d Cir. 1975); *United States v. Boone,* 460 F.2d 1285 (4th Cir. 1972).

for federal jurisdiction over the offense. Nothing in the text of § 2314, its purpose, or its legislative history indicates that the interstate commerce requirement serves more than a jurisdictional basis function. Because the requirement is merely jurisdictional, the lack of any intent or knowledge with respect to transportation in interstate commerce is not material to the substantive offense,[4] although, of course, only persons who did intend their basic conduct and who did satisfy the statute's other intent requirements may be convicted.

Just as the substantive offense here does not require intent or knowledge with respect to the interstate nature of the transportation of counterfeit securities, neither is such intent or knowledge necessary in order to obtain a conviction for *conspiring* to commit this substantive offense. The Second Circuit once held that knowledge of the transportation in interstate commerce was an essential element to convict in the offense of conspiracy to violate § 2314 although it was not a necessary element of the substantive offense, *United States v. Crimmins*, 123 F.2d 271, 273–74 (1941). But the Supreme Court's more recent decision in *United States v. Feola*, 420 U.S. 671, 686–96, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), casts grave doubt upon the viability of the analysis used in *Crimmins*. The same reasons that were given in *Feola* for holding that the conspiracy statute does not require any knowledge with respect to the jurisdictional basis for 18 U.S.C.A. § 111, where the substantive offense itself does not require such knowledge, also apply to support our conclusion about the relationship between the conspiracy statute and 18 U.S.C.A. § 2314. Several circuits rejected the holding of *Crimmins* even before the decision of *Feola*,[5] and at least two other circuits recently have applied *Feola* to reach the same conclusion about § 2314 and the conspiracy statute that we reach here.[6]

■ We conclude that knowledge of the interstate nature of the transportation of counterfeit securities generally is not a prerequisite for proving the offense of conspiring to violate § 2314.[7] Whether or not the printer knew that Squires intended to transport the securities in interstate commerce, Squires intended to do so and did it. That satisfies the jurisdictional requirement, and it is irrelevant that his co-conspirator may not have known of his intention.

## II. Indictment 77–2–N

The six offenses charged in Indictment 77–2–N were based on Squires' arrangement to cash five counterfeit cashier's checks, drawn on the Bank of Virginia, in Freeport, Grand Bahamas. In Norfolk, Virginia, Squires provided Carl Thompson and Forest Parker with at least five counterfeit cashier's checks. The three men, accompanied by an undercover FBI agent, flew to Freeport for the purpose of cashing the checks in a casino. Thompson and Parker then cashed five of the counterfeit checks in the casino on five separate occasions, but all during the course of one evening. They returned to Squires a share of the proceeds from each check. Later that

---

4. *Cf. United States v. Feola*, 420 U.S. 671, 676–86 and n. 9, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975) (interpretation of 18 U.S.C.A. § 111); *United States v. Green*, 544 F.2d 746 (4th Cir. 1976) (interpretation of 18 U.S.C.A. § 922).

5. *See United States v. Greer*, 467 F.2d 1064, 1071–72 (7th Cir. 1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *United States v. Roselli*, 432 F.2d 879, 890–92 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *United States v. Mingoia*, 424 F.2d 710, 712 (2d Cir. 1970).

6. *United States v. Newson*, 531 F.2d 979, 981–82 (10th Cir. 1976); *United States v. Johnson*, 514 F.2d 431 (3d Cir. 1975); *cf. United States v. Muncy*, 526 F.2d 1261 (5th Cir. 1976) (similar interpretation of 18 U.S.C.A. § 2315); *United States v. Fairfield*, 526 F.2d 8 (8th Cir. 1975) (similar interpretation of 18 U.S.C.A. § 2312).

7. The caveat discussed by Justice Blackmun in *United States v. Feola*, 420 U.S. 671, 695–96, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), regarding situations in which a defendant's degree of knowledge with respect to a jurisdictional element can be relevant, should also apply to our conclusion concerning § 2313. But that caveat does not affect the case at bar.

same evening, the four men flew back to Norfolk.

Count One of Indictment 77–2–N alleged that Squires had conspired with Thompson and Parker to transport the counterfeit checks in foreign commerce, in violation of 18 U.S.C.A. §§ 2, 371, 2314. Count Two charged Squires with committing the substantive offense defined by § 2314, by transporting one particular counterfeit cashier's check from Norfolk to Freeport. Counts Three through Six repeated the charge of Count Two with respect to each of the other four checks that eventually were cashed in Freeport.

The jury convicted Squires on all six counts of Indictment 77–2–N. The district judge sentenced Squires to three consecutive five-year prison terms for each of the first three counts. In addition, the judge sentenced Squires to three more five-year terms on Counts Four through Six of the indictment, each to run concurrently with the five-year sentence imposed on Count One of this indictment.

Again, only one of Squires' contentions merits discussion.[8] Squires contends that he committed only one substantive offense by arranging to cash the five counterfeit cashier's checks in Freeport and that his convictions on Counts Three through Six of Indictment 77–2–N must be reversed.

■ A person transforms a state offense into a violation of § 2314 by transporting counterfeit securities in interstate or foreign commerce. Interstate or foreign transportation within the meaning of 18 U.S.C.A. § 2314 can be proved by either of two means. First, the government can prove that a defendant actually transported a counterfeit security from one state or one country to another state or country. Second, the government can prove that a defendant caused a counterfeit security to

be transported from one state or country to another through the negotiation process. *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

The government probably could have used either or or both means to prove that Squires transported counterfeit securities in foreign commerce, if it had chosen to do so. But instead, Counts Two through Six of Indictment 77–2–N charged Squires with foreign transportation only by the first means, because the indictment referred only to transportation of the counterfeit securities from Norfolk to Freeport. This statement of the charges defines the case against Squires and governs our resolution of Squires' contention that he should not have been convicted for committing multiple offenses.

■ The rule is clear that a person has committed only one offense by transporting as a group any number of counterfeit securities in interstate or foreign commerce, if the transportation is to be proved by the first means. *Castle v. United States,* 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961), *reversing* 287 F.2d 657 (5th Cir. 1961); *Cooks v. United States,* 461 F.2d 530 (5th Cir. 1972); *Kessel v. United States,* 303 F.2d 563 (8th Cir. 1962); *see United States v. Dilts,* 501 F.2d 531, 534–35 (7th Cir. 1974). According to this rule, Squires committed only one substantive offense by transporting the five counterfeit cashier's checks from Norfolk to Freeport.

Had the indictment charged interstate transportation by causing the five checks to be transported in foreign commerce from Freeport to the drawee bank in Virginia, we would have been met with a different problem. It has been held that the negotiation of each separate check is a separate offense,[9] but there is only one offense if the defendant can prove the negotiated checks

---

8. Contrary to Squires' contention on appeal, transportation of the counterfeit cashier's checks from Norfolk to the Grand Bahamas clearly does satisfy the jurisdictional requirement of transportation in "foreign commerce," *see* 18 U.S.C.A. §§ 10, 2314.

9. *See, United States v. White,* 524 F.2d 1249, 1253–54 (5th Cir. 1975), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976); *Popeko v. United States,* 513 F.2d 771, 773 (5th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975); *Amer v. United States,* 367 F.2d 803, 805 (8th Cir. 1966).

actually travelled in one package.[10] It has also been held that separate offenses were committed if the defendant can prove no more than a possibility that the negotiated checks moved together in interstate commerce.[11]

We need not wrestle with this problem for the indictment charged only transportation from Norfolk to Freeport. The checks travelled together and only one substantive offense was committed.

In accordance with our conclusion that Squires should have been convicted of only one substantive offense based on his transportation of the checks to the Grand Bahamas, we reverse his convictions on Counts Three, Four, Five and Six of Indictment 77-2-N. Our holding does not affect the two consecutive sentences imposed on Counts One and Two of Indictment 77-2-N. But the reversal of the conviction on Count Three of Indictment 77-2-N does eliminate one of the consecutive sentences imposed by the district judge, thereby reducing the defendant's total term of imprisonment to ten years.[12]

*AFFIRMED IN PART AND REVERSED IN PART.*

---

10. *See, Gilinsky v. United States,* 368 F.2d 487 (9th Cir. 1966).

11. *See, United States v. Dilts,* 501 F.2d 531 (7th Cir. 1974); *King v. United States,* 372 F.2d 946 (10th Cir. 1967).

12. The same reasons given for reversing Squires' convictions on Counts Three through Six of Indictment 77-2-N also require reversal of his conviction on Count Three of Indictment 77-3-N, because Squires transported all 10,000

counterfeit checks into North Carolina at the same time. The sentence imposed for this count ran concurrently with the sentence imposed for Count One of Indictment 77-2-N, however, so reversal of the conviction does not affect Squires' total term of imprisonment.