**UNITED STATES of America**

v.

**Jacqueline HARRIS and Harold Lewis, Defendants.**

**No. S 89 Cr. 488 (RWS).**

United States District Court, S.D. New York.

Dec. 22, 1989.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Marjorie Miller, Asst. U.S. Atty., of counsel), for U.S.

Michael F. Bachner, New York City, for defendant Jacqueline Harris.

## OPINION

SWEET, District Judge.

Defendant, Jacqueline Harris ("Harris") has moved, pursuant to Federal Rule of Criminal Procedure 29(c), that the court set aside the jury's verdict convicting Harris of the crime of transporting stolen securities in interstate commerce in violation of 18 U.S.C. §§ 2314 and 2. For the reasons set forth below, this motion is denied.

*Prior Proceedings*

Following a three-day trial, on November 17, 1989 a jury unanimously found Harris guilty on Count One for the transporting of stolen property across state lines and aiding and abetting the commission of that crime in violation of Title 18, U.S.C. §§ 2314 and 2. The jury acquitted co-defendant Harold Lewis on Count One and also acquitted Harris of Count Two charging Harris with purloining securities that had been entrusted to the care of the Central Federal Savings and Loan Association (the "bank").

*Facts*

The government's evidence at trial consisted of the testimony of Special Agents Robert B. DiBellis, John C. Eckenrode, John Lewoczko, Robert Murphy, Carl Keener, and R. Glenn Slaughter of the Federal Bureau of Investigation, Margaret Sichel ("Sichel"), the victim of the crime, and Amy Saavedra, the Assistant Branch Manager at the Bank at the time of the crime.

The government's evidence included Sichel's cancelled check and receipt evidencing her rental of a safe deposit box at the bank, a small red envelope in which the bank gave safe deposit keys to its customers, a diagram of the bank's layout, various blank forms used by the bank in connection with its safe deposit box operation, a model safe deposit box, the bank's employee records from September 23 through October 20, 1985, fifty-five securities in the name of Margaret Sichel, the two paper bags in which the securities were found, the birth certificate of Jacqueline Harris's child, Harold Lewis's major case prints, the bogus safe deposit box key, photographs of the bogus key, the markings found on the bogus key, and a stipulation relating to the value of the securities.

The court instructed the jury in pertinent part as follows:

To satisfy this element [transportation of property in interstate commerce], the government need not show that the defendant actually did the transporting of the property. Nor need the government show that the defendant knowingly crossed state lines while transporting the property. The government sufficiently satisfies this element if it proves [beyond

a reasonable doubt] that the property was transported or was moved from one state to another and that the defendant you are considering caused the interstate transportation to occur or performed a substantial step in furtherance of its journey.

## Discussion

### A. The Standard of Review

Harris contends that the evidence adduced at trial was insufficient to sustain the verdict on Count One beyond a reasonable doubt. A defendant challenging the sufficiency of the evidence bears a very heavy burden. If a reasonable mind is able to infer guilt on each and every element of the charged offense, then a motion for judgment of acquittal must be denied. *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984). As set forth in the seminal case on this issue, the court must:

> determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If [it] concludes that upon the evidence there must be such a doubt in a reasonable mind, [it] must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If [it] concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [it] must let the jury decide the matter.

*Curley v. United States*, 160 F.2d 229, 232–33 (D.C.Cir.1947), *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947) (adopted by the Second Circuit in *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir.1972)). Furthermore, the court must draw all reasonable inference and resolve all issue of credibility in favor of the government. *United States v. Glasser*, 315 U.S. 60, 81, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942); *United States v. Teitler*, 802 F.2d 606, 614 (2d Cir.1986). These principles apply whether the evidence being reviewed is direct or circumstantial. *See Glasser*, 315 U.S. at 80, 62 S.Ct. at 469.

Harris urges the court to set aside her conviction on Count One because she was acquitted of stealing the securities from the bank in Count Two. Harris argues that the jury's finding Harris not guilty on Count two *a priori* establishes that she did not "cause the interstate transportation to occur [nor did she] perform( ) a substantial step in furtherance of its journey" by such theft. Harris further contends that inasmuch as the jury acquitted Harris of purloining the property from the bank, the court should not use that evidence in determining the sufficiency of the evidence as to the interstate transportation count.

### 1. A Jury Reasonably Could Find Harris Guilty on Count One

■ Count One consisted of both the charge of interstate transportation and aiding and abetting. The jury's determination that Harris did not commit the theft charged in Count Two does not preclude the jury from determining that Harris could have aided and abetted the transportation of the stolen property or have in some way performed "a substantial step in furtherance of its journey." It is not unreasonable to conclude that, apart from the actual theft, Harris in some way aided and abetted the scheme to transport the goods or set in motion the events that permitted the transportation such as would constitute a substantial step in the journey of the goods.

The evidence at trial established that on December 18, 1985, only five weeks after Sichel discovered her securities were missing from the bank, and no more than eighteen days after Harris said that she saw them in the apartment of her boyfriend, Gary Lewis ("Lewis"), Sichel's securities were found in Carteret, New Jersey in the possession of Lewis. The jury reasonably could have concluded that Harris, the vault attendant at the bank in September 1985, knowingly participated in the movement of those securities from Sichel's safe deposit box into Lewis's hands and that she knew the securities were stolen, even if she did

not steal them. *See, e.g., United States v. Teresa,* 420 F.2d 13, 15 (4th Cir.1969) ("it is well settled ... that circumstantial evidence is enough if it satisfies the jury beyond a reasonable doubt that the interstate transportation, as alleged in the indictment, actually occurred."), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1498, 25 L.Ed.2d 684 (1970). *See also* J. Moore, *Federal Practice,* ¶ 29.06 at 29–22 ("An elemental fact may be inferred from a basic fact proved by the prosecution if the link between the fact and the inference is reasonable.").

This inference could have been strengthened by the fact that Harris was carrying Lewis's child at the time Lewis was found with the securities and the conclusion that Harris was a beneficiary, directly or indirectly, to any process Lewis was to receive from the sale of those securities.

That the securities were found on Lewis two months after the theft in no way impinged on the jury's right to draw these inferences. *See United States v. Wilson,* 523 F.2d 828 (8th Cir.1975) (possession of stolen jewelry two months after theft can give rise to inference of guilty knowledge), *cert. denied,* 434 U.S. 849, 98 S.Ct. 158, 54 L.Ed.2d 117 (1977); *United States v. Jacobs,* 475 F.2d 270, 281 (2d Cir.) (possession of treasury bills two months after they had been stolen was circumstantial evidence of knowledge that they were stolen), *cert. denied,* 414 U.S. 821, 94 S.Ct. 116, 131, 38 L.Ed.2d 53 (1973).

The evidence at trial established that on September 25, 1985 Sichel went to her safe deposit box at the bank and, although she did not know it until later, was the victim of a key switch on that day. Harris began her employment as a vault attendant at the bank on September 23, 1985 and the bank's employment records demonstrated that Harris was the vault attendant on duty on September 25, 1985.

The evidence at trial also established that the scratched-off name on the bogus key that Sichel was given on September 25, 1985 was "Lefebure." The bank used Lefebure keys and safe deposit boxes and vault attendants routinely had access to Lefebure keys either by accessing the banks' supply of those keys when renting a box to a customer or by receiving them from a customer surrendering a box. On the basis of the key given Sichel, the jury reasonably could have concluded that Harris was involved in the theft of the securities and thus knew they were stolen.

The evidence at trial established that on October 14, 1985, after reporting to work for only eight business days, Harris was fired. The explanation offered for her absenteeism was sickness related to her pregnancy. The birth certificate of the child, however, demonstrated that Harris gave birth more than nine months after the absenteeism started. The jury reasonably could have inferred that Harris's work record reflected consciousness of guilt of involvement with the theft and knowledge that the securities were stolen.

The evidence at trial also established that on October 24, 1985, when Sichel attempted to gain access to her box, it was discovered that all the bank's records of her having rented a box had disappeared. Vault attendants had access to all of the bank's records that evidence a safe deposit box rental and the jury reasonably could have concluded that Harris was in a position to destroy the cards evidencing Sichel's box rental in an attempt to cover up the theft.

The evidence at trial established that Harris told Agent Eckenrode that she had seen the stolen securities in her boyfriend's apartment in December 1985, and may have touched one or two. Yet, Harris's fingerprints were not found on the securities. The jury reasonably could have disbelieved Harris's claim that she touched the securities innocently because her fingerprints were not found on them. Nevertheless, the jury reasonably could have believed that Harris touched the securities under non-innocent circumstances, either through her involvement with the theft or the storage of the securities while awaiting a buyer.

The evidence at trial established that on December 18, 1985, neither Gary nor Harold Lewis said anything about the securities being found in a taxi cab. In March 1986, both Gary and Harold Lewis said that

Gary Lewis had found the securities in a taxi cab. When Harris spoke with the FBI she also said Gary Lewis had found the securities in a taxi.

The jury reasonably could have inferred from these statements that Gary and Harold Lewis as well as Harris got together at some point between December 18, 1985 and March 1986 to concoct a story that would purport to give Gary Lewis an innocent reason for possessing the securities.

There need not have been any evidence that Harris physically transported the securities across state lines or that she had knowledge of what was to happen to the securities once they were stolen. *United States v. Brawer*, 482 F.2d 117 (2d Cir. 1973). The evidence adduced at trial was sufficient to allow a reasonable mind to conclude, beyond a reasonable doubt, that Harris took substantial steps in furtherance of the journey of the securities across state lines.

### 2. Consideration of all Evidence

■ Harris contends that inasmuch as the jury acquitted her of purloining the property from the bank, the court should not use that evidence offered to establish her guilt on Count Two as evidence in determining the sufficiency of the evidence as to Count One. To support this proposition, Harris cites *United States v. Kramer*, 289 F.2d 909 (2d Cir.1961) where a defendant was acquitted of stealing from a post office and aiding and abetting the theft. There the court held that the government was estopped from offering evidence that the defendant participated in the burglary in a new trial, on a subsequent indictment, charging defendant with conspiring to break into the same post office and to receive property stolen therefrom. *Id.* at 918–19.

However, the *Kramer* decision addresses the issue of admissibility of evidence in a second trial where a defendant was acquitted of related charges in an earlier trial. The Second Circuit found that it was impermissible for the government to introduce any evidence of Kramer's participation in the burglary in the second trial because it had been already decided in the first trial that the defendant had not participated in the burglary. The instant case does not involve two trials but instead two counts in the same trial.

The government was required to introduce evidence demonstrating Harris's involvement in the theft because the charge in Count Two accused Harris of purloining the same securities alleged to have been transferred over state lines in Count One. Moreover, unlike Kramer, Harris's acquittal of the theft count did not include an acquittal on aiding and abetting the theft because Count Two did not allege aiding and abetting.

Thus, the acquittal on Count Two did not preclude a finding that Harris was involved in the theft, merely that Harris did not herself purloin the securities. The jury was entitled to conclude that Harris's involvement in the theft, as distinct from her commission of the theft, was the substantial step that Harris took in furtherance of the journey of the securities across state lines. *See United States v. Mingoia*, 424 F.2d 710 (2d Cir.1970) (Mingoia's acquittal on interstate transportation of stolen property and Section 2 apparently does not affect admissibility of co-conspirator's testimony against him on conspiracy count of which he was convicted.).

### Conclusion

For the reasons set forth above, Harris's motion to set aside the jury's verdict convicting her of the crime of transporting stolen securities in interstate commerce is denied.

It is so ordered.